SHARON R. COOK v. BANKERS LIFE AND CASUALTY COMPANY, AN ILLINOIS CORPORATION AND JOHN EILERS

No. 409PA89

(Filed 14 August 1991)

1. **Appeal and Error § 87 (NCI4th)— action against insurance company and agent—dismissal of claim against company— interlocutory appeal—possibility of inconsistent verdicts**

> In an action to recover against an insurance company and its agent where plaintiff alleged breach of contract on the part of defendant insurance company, breach of contract by defendant agent for failure to procure a policy of insurance on her husband's life, negligence by the agent in failing to procure the policy, fraudulent misrepresentations to plaintiff by defendant insurance company through its agent, negligence by defendant company through its agent in supplying false information and advice, unfair and deceptive trade practices by defendant company, and bad faith and wanton action by defendant company, an order dismissing the case as to defendant company was interlocutory but affected a substantial right of plaintiff which she would lose if it was not corrected before a final judgment was entered, since there was a possibility of inconsistent verdicts if the claims against both defendants were tried separately in that some of the issues in the claims against both defendants were identical; the questions raised by plaintiff's claims against the two defendants were not covered by defendant agent's cross claim against defendant company; and defendant company would not be estopped from relitigating issues tried between plaintiff and defendant agent.

**Am Jur 2d, Appeal and Error § 859.**

COOK v. BANKERS LIFE AND CASUALTY CO.

[329 N.C. 488 (1991)]

2. **Insurance § 12 (NCI3d) — married person's right to insure spouse — spouse's consent not required**

N.C.G.S. § 52-3 allows a married person to insure the life of his or her spouse, and it does not provide that such a person must have the consent of the spouse ,to do so.

**Am Jur 2d, Insurance §§ 530, 531, 975.**

Justice MEYER concurring in result.

ON plaintiff and defendant Eilers' petitions for discretionary review of the decision of the Court of Appeals dismissing their appeals from orders entered by *Owens, J.,* on 23 May 1989 in the Superior Court, BUNCOMBE County. Heard in the Supreme Court 12 April 1990.

This is an action by the plaintiff against the defendant insurance company and its agent. The plaintiff alleged that she had procured a life insurance policy on her husband's life with the defendant insurance company through its agent John Eilers. She alleged further that it was a policy that provided for double indemnity for accidental death. The plaintiff's husband was killed in an accident and the defendant insurance company had refused to pay for its liability under the policy.

The plaintiff asserted seven claims in the alternative. These were (1) breach of contract on the part of the defendant insurance company, (2) breach of contract on the part of the defendant Eilers for his failure to procure an insurance policy for the plaintiff as he had contracted to do, (3) negligence on the part of the defendant Eilers in not procuring the policy and not properly advising the plaintiff, (4) fraudulent misrepresentations to the plaintiff by the defendant insurance company through its agent Eilers, (5) negligence on the part of the defendant insurance company through its agent Eilers in supplying false information and advice, (6) unfair and deceptive trade practices by the defendant insurance company through its agent Eilers, and (7) bad faith and wanton action by the defendant insurance company entitling the plaintiff to punitive damages. The defendant filed answers denying the pertinent allegations. The defendant Eilers cross claimed against Bankers Life, alleging that if he had acted wrongfully it was caused by the negligence of Bankers Life in not properly training him or because of Bankers Life's breach of contract to train him properly.

Each of the defendants made a motion for summary judgment. The papers filed showed, in the light most favorable to the plaintiff,

COOK v. BANKERS LIFE AND CASUALTY CO.

[329 N.C. 488 (1991)]

that the plaintiff met with Mr. Eilers, an agent of Bankers Life, to discuss the purchase of insurance. The plaintiff told Mr. Eilers that she wanted an insurance policy on the life of her husband but her husband did not believe in life insurance and would not procure a policy. Mr. Eilers testified at a deposition hearing that he filled out an application for a life insurance policy and the plaintiff signed it. The plaintiff testified she did not remember signing it. The plaintiff paid two months premiums. Mr. Eilers told the plaintiff the policy was then in effect.

When Mr. Eilers showed the application to an "entry level manager" at the defendant insurance company's office in Asheville the manager told him the application would not be accepted by the company because the plaintiff's husband had not signed it. Mr. Eilers told the manager that the plaintiff's husband would not sign it because he was opposed to life insurance. The manager then told Mr. Eilers to sign it for Mr. Cook. Mr. Eilers signed Mr. Cook's name to the application and delivered it to the branch manager.

The plaintiff's husband was killed in an accident approximately three weeks after the application for the life insurance policy was submitted. The defendant Bankers Life refused to pay on the policy and refunded the premiums.

The superior court granted the motion for summary judgment on behalf of the defendant Bankers Life and denied Mr. Eilers' motion for summary judgment. The Court of Appeals dismissed the appeals of the plaintiff and Mr. Eilers. We allowed petitions for discretionary review by both parties.

*Shuford, Best, Rowe, Brondyke & Wolcott, by James Gary Rowe and Patricia L. Arcuri, for plaintiff appellant.*

*Hendrick, Zotian, Cocklereece & Robinson, by William A. Blancato, for defendant appellant John Eilers.*

*Roberts, Stevens & Cogburn, P.A., by Elizabeth M. Warren, for defendant appellee Bankers Life and Casualty Company.*

WEBB, Justice.

*Plaintiff's Appeal*

[1] We shall treat first the plaintiff's appeal. The granting of summary judgment in favor of the defendant Bankers Life did

## COOK v. BANKERS LIFE AND CASUALTY CO.

[329 N.C. 488 (1991)]

not finally determine all the claims in this case and was thus an interlocutory order. In order for an interlocutory order to be appealable it must deprive the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered. *Waters v. Personnel, Inc.*, 294 N.C. 200, 240 S.E.2d 338 (1978).

The plaintiff relies on *Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982). In that case the plaintiff sued a hockey player and his team for an alleged assault on the plaintiff during a hockey match. The plaintiff in the same action sued the manufacturer of the mouthpiece the plaintiff was wearing at the time of the assault for negligent manufacture and breach of warranty. The superior court granted summary judgment for the manufacturer. We held the plaintiff had a right of immediate appeal because of the possibility of inconsistent verdicts if the case against the hockey player and his team was tried first and the case against the manufacturer was tried after an appeal.

We agree with the plaintiff that there is a possibility of inconsistent verdicts in this case if the claims are tried separately. Some of the issues in the claims against both defendants are identical. Her claims against both defendants include the issues of whether the consent of her husband was necessary when the application was submitted to the insurance company, whether Mr. Eilers was an agent of Bankers Life with authority to bind Bankers Life, and whether the conduct of Mr. Eilers and the manager for Bankers Life amounts to a waiver or estops the defendants from requiring the consent of the insured. There could be different verdicts on these issues if they are tried separately. Pursuant to *Bernick*, we hold that the order dismissing the case as to Bankers Life affected a substantial right of the plaintiff which she will lose if it is not corrected before a final judgment is entered.

Defendant Bankers Life contends there is not a possibility of inconsistent verdicts. It says this is so because it is still in the case by way of Mr. Eilers' cross claim against it. Bankers Life says this means the jury will have an opportunity to decide any question of its liability. Mr. Eilers has cross claimed for indemnity from Bankers Life based on its negligence in training him and breach of contract to train him. The questions raised by the plaintiff's claims against the two defendants are not covered by this cross claim.

COOK v. BANKERS LIFE AND CASUALTY CO.

[329 N.C. 488 (1991)]

Bankers Life also contends there is no possibility of inconsistent verdicts because of the doctrine of collateral estoppel. Relying on *McInnis v. Hall*, 318 N.C. 421, 349 S.E.2d 552 (1986), Bankers Life says it will not be able to relitigate any issues determined at a trial between plaintiff and Mr. Eilers. We do not believe Bankers Life would be estopped under *McInnis* from relitigating issues tried between the plaintiff and Mr. Eilers. Justice Frye, writing for the Court in *McInnis*, said it was not necessary for an estoppel that all parties in a case to have been parties in the case from which the estoppel arose. He was careful to say, however, that the party to be estopped must have been a party to the previous case with a chance to litigate the issues for which the estoppel is pleaded. Bankers Life would not have a chance to litigate the issues in a trial between the plaintiff and Mr. Eilers if the action against it is dismissed. It would not be estopped to litigate these issues against the plaintiff at another trial.

We reverse the order of the Court of Appeals which dismissed the plaintiff's appeal.

[2] We consider next the question of whether summary judgment was properly entered for Bankers Life. In the order granting summary judgment the court did not give any reason other than that the motion was well founded. In its motion for summary judgment Bankers Life gave as its reason that "Mr. Everett Cook never consented to issuance of a life insurance policy on his life." In their briefs the parties treat only the question of the requirement under the law of this state that a husband consent before his wife may have his life insured. We shall address this question only.

We hold it was error to grant the motion for summary judgment by Bankers Life. We base this holding on the plain words of N.C.G.S. § 52-3 which says:

> Any married person in his or her own name, or in the name of a trustee with his assent, may cause to be insured for any definite time the life of his or her spouse, for his or her sole and separate use, and may dispose of the interest in the same by will.

This section has been in effect for more than one hundred years to give wives the right to insure the lives of their husbands. *See* Rev. s. 2099 and C.S., s. 2512. In 1965 it was revised to give husbands the right to insure the lives of their wives. *See* 1965

## COOK v. BANKERS LIFE AND CASUALTY CO.

[329 N.C. 488 (1991)]

S.L., c. 878, s. 1. This is the first case which has interpreted the section.

This section does not create in a wife an insurable interest in the life of her husband. She has such an interest without the benefit of the section. *See Chavis v. Insurance Co.*, 251 N.C. 849, 112 S.E.2d 574 (1960); *Heilig v. Insurance Co.*, 222 N.C. 231, 22 S.E.2d 429 (1942); *Webb v. Insurance Co.*, 216 N.C. 10, 3 S.E.2d 428 (1939). In order for the section to have any meaning, the section must give a wife something in addition to her rights under the common law. We believe it gives wives the right to insure their husbands' lives without their consent. The statute allows a married person to insure the life of his or her spouse and it does not provide that such a person must have the consent of the spouse to do so. We do not believe we should add this requirement to the statute.

In *Manufacturing Co. v. McCormick*, 175 N.C. 277, 95 S.E. 555 (1918), we held that it was necessary to have the consent of an insured although the person applying for a life insurance policy had an insurable interest in the insured's life. This case did not involve life insurance on a spouse and N.C.G.S. § 52-3 (1984) was not implicated.

We hold it was error to grant Bankers Life's motion for summary judgment on the ground that Mrs. Cook could not insure her husband's life without his consent.

### John Eilers' Appeal

The defendant John Eilers has appealed from the order denying his motion for summary judgment. Ordinarily such an appeal should be dismissed. *Auction Co. v. Myers*, 40 N.C. App. 570, 253 S.E.2d 362 (1979). In this case Mr. Eilers argues, as does the plaintiff in her appeal, that the issues are so intertwined that there is a substantial likelihood of inconsistent verdicts if the cases are tried separately. This threat no longer exists in light of our ruling on the plaintiff's appeal. We affirm the order of the Court of Appeals dismissing Mr. Eilers' appeal. We note that Mr. Eilers wanted to argue on appeal that he was not liable to the plaintiff because a life insurance policy may not be issued without the consent of the insured. We have decided this question in the plaintiff's appeal.

Affirmed in part; reversed and remanded in part.

COOK v. BANKERS LIFE AND CASUALTY CO.

[329 N.C. 488 (1991)]

Justice MEYER concurring in result.

I concur in the result reached in the opinion of the majority. I am unable to concur in some of the reasoning which the majority employs to reach that result, and I write separately solely for the purpose of explaining my position in that regard.

In explaining its interpretation of N.C.G.S. § 52-3 and its predecessors, N.C. Rev. Code § 2099 and N.C. Consol. Stat. § 2512, the majority says: "In order for the section to have any meaning, the section must give a wife something in addition to her rights under the common law. We believe it gives wives the right to insure their husbands' lives without their consent." I am unable to agree with those two statements because, as every lawyer knows, the legislature frequently enacts a statute which simply codifies existing common law, without any change whatsoever to the common law it codifies. I believe that is precisely the case with N.C.G.S. § 52-3 and its predecessors because, at common law, wives and husbands had an insurable interest in the lives of each other, and that insurable interest was not dependent upon the consent of the insured spouse.

I doubt that the majority would seriously question the right at common law of even a divorced person to insure the life of the former spouse who will not consent thereto, where the former spouse is obligated by judgment of the court to pay alimony or child support, so long as that obligation exists. *See* 2 J. Appleman, *Insurance Law and Practice* § 802 (1966); 43 Am. Jur. 2d *Insurance* § 978 (1982).