PAMELA PRIEST AND BETTY LOU SKINNER, PLAINTIFFS v. THOMAS SOBECK AND MAKE-UP ARTISTS AND HAIR STYLISTS LOCAL 798, OF THE INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOTION PICTURE OPERATORS OF THE UNITED STATES AND CANADA, DEFENDANTS

No. COA01-1476

(Filed 5 November 2002)

**1. Appeal and Error— appealability—grant of partial summary judgment—interlocutory order—no final judgment**

Plaintiffs' appeal in a defamation action from the trial court's grant of partial summary judgment in favor of defendants is dismissed as an appeal from an interlocutory order even though the trial court certified this case for immediate review under N.C.G.S. § 1A-1, Rule 54(b), because there has not been a final judgment when the trial court's order essentially left intact plaintiffs' defamation allegations based on the statement that they stood by while a non-union member was hired.

**2. Appeal and Error— appealability—denial of partial summary judgment—interlocutory order—no substantial right**

Defendants' appeal in a defamation action from the trial court's denial of partial summary judgment is dismissed as an appeal from an interlocutory order even though the trial court

certified this case for immediate review under N.C.G.S. § 1A-1, Rule 54(b), because: (1) there was no final judgment; and (2) defendants have failed to show that the trial court placed any First Amendment restrictions or prohibitions upon them that affect a substantial right.

Judge GREENE dissenting.

Appeals by plaintiffs and defendants from order granting partial summary judgment in favor of defendants entered 4 September 2001 by Judge Melzer A. Morgan, Jr., Superior Court, Moore County. Heard in the Court of Appeals 10 September 2002.

*Barringer, Barringer, Stephenson & Schiller by David G. Schiller and Marvin Schiller for plaintiffs.*

*Smith, James, Rowlett & Cohen by Seth R. Cohen and Stanford, Fagan & Giolito, L.L.C., by Robert S. Giolito and Jeffrey D. Sodko for defendants.*

WYNN, Judge.

This appeal concerns a defamation action brought by labor union members Pamela Priest and Betty Lou Skinner against their labor union and its representative. They appeal from the trial court's grant of partial summary judgment in favor of defendants; likewise, defendants appeal from that part of the summary judgment that was not granted in their favor. On review, notwithstanding the trial court's certification of this matter for immediate review under Rule 54(b), we conclude that the partial grant of summary judgment neither constitutes a final judgment nor affects a substantial right. Accordingly, we dismiss this appeal as interlocutory.

The underlying facts to this appeal show that defendant Make-up Artists and Hair Stylists Local 798, of the International Alliance of Theatrical Stage Employees and Motion Picture Operators of the United States and Canada, hereinafter "Local 798," is the collective bargaining representative of most make-up artists and hairstylists in the film industry throughout the eastern half of the United States. Defendant Thomas Sobeck is the District Field Representative for Local 798; Priest and Skinner have been members of Local 798 for several years.

In June 1999, Priest was hired as head of the hair department on the CBS film "Shake, Rattle & Roll," a production governed by a col-

lective bargaining agreement with Local 798. Priest then hired Skinner as "third hair" and filled all of the positions in her department with union members. When Priest arrived in Charlotte, North Carolina, to begin work on the production, she learned that a non-union worker had been hired as "second" in the make-up department. Priest later learned that Kelly Gore Jefferson, head of the make-up department, was dissatisfied with the selection of the non-union worker. Priest advised her to speak with the union production manager about her concerns.

Meanwhile, Sobeck, the union district representative, had been receiving complaints from union members about non-union members working on the production. Sobeck called Priest to find out what she knew about the hiring of non-union make-up employees. Priest asked Sobeck if they could speak at a later time since she was fatigued from working that day. In response, Sobeck faxed Priest and Skinner a letter informing them they could not be forced to work with or hire non-union workers. The next day Priest approached the unit production manager and told him that he needed to call Sobeck about the hiring of non-union workers. According to Priest, the unit production manager (in a previous conversation), informed her that Sobeck was aware of the situation and that the non-union worker had been hired at the request of the film's producer. The unit production manager called Sobeck and after the phone conversation, told Priest the matter had been resolved.

However, in the next union newsletter, Sobeck stated the following:

> I received a call from one of our members in the Carolina's. She was asking me, why as a paid up dues paying member of our local, she was not hired, but passed over for a non-member make-up person.
>
> . . .
>
> I was aware of the problem and sent faxes to both Heads of the Department, Pam Priest and Kelly Gore Jefferson, stating that the Production cannot force them to hire non-members. I have not heard one word from either Head of Department. It is time you, the Membership file complaints and get rid of these not thinking members.
>
> . . .

So there it is. Now it's up to you, the Membership, to advise this Local how you all would like to proceed on these issues when they arise.

. . .

Kelly Gore Jefferson did in fact hire non-union make-up over her own sisters and brothers and gave permission to the person to hire additional make-up and that the other Head of the Hair Department stood by, along with two other Local 798 Members, Roy Bryson and Betty Lou Skinner, on the production "Shake Rattle & Roll" being shot in Charlotte, North Carolina.

. . .

O.K. now all of you Members who have been complaining about this kind of problem can put a stop to it. Write your Business Agent and advise him how you want him to deal with this problem.

I have given you Members the ammunition now it's up to you to use it.

As a result of the newsletter comments and its dissemination to union members, Priest and Skinner brought this action alleging libel per se, class two libel and libel per quod. In granting partial summary judgment in favor of the defendants, the trial court stated:

There are no genuine issues of material fact with respect to any of the claims alleged except as to whether the defendant Sobeck with malice published in the August newsletter and subsequent newsletters that plaintiffs stood by when Henrita Jones, not a member of Local 798, was hired in mid to late June 1999 when such hiring was actually initially approved by union representative Vincent Callaghan and when defendant Sobeck himself later allegedly approved, explicitly or implicitly, the hiring of Ms. Jones. . . . Except with respect to the hiring of Ms. Jones and defendant Sobeck's assertion that plaintiffs stood by while Ms. Jones was hired, when he allegedly knew that he had himself approved the hire, no malice has been shown on the part of the defendants as to any other factual scenario.

Thus, the court granted partial summary judgment as to any and all claims "except any claim based upon the limited assertion that defendant Sobeck maliciously published that it was plaintiffs who stood by when Ms. Jones was hired when he knew he had approved

the hire himself." Thereafter, the trial court, exercising its discretion under N.C. Gen. Stat. § 1A-1, Rule 54(b), determined that there was no just reason for delay of appellate review of this judgment which determined less than all of the claims of the plaintiffs.

### Plaintiffs' Interlocutory Appeal

[1] It is well settled that a "grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group, Inc. v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). However, there are two situations in which one may seek appellate review of an interlocutory order. First, in claims involving multiple claims or multiple parties, if a final judgment is entered as to one, but not all, of the claims or parties and the trial judge certifies in the judgment that "there is no just reason for delay," such judgment is then subject to judicial review. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2001). Second, if delaying the appeal would prejudice a substantial right, then there may be judicial review. *Liggett*, 113 N.C. App. at 23-24, 437 S.E.2d at 677.

In general, a trial court's certification of an order for immediate appeal under Rule 54(b) permits the parties to prosecute an interlocutory appeal. *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999) (quoting *DKH Corp. v. Rankin-Patterson Oil Comp., Inc.*, 348 N.C. 583, 585, 500 S.E.2d 666, 668 (1998)). "Nonetheless, the trial court may not, by certification, render its decree immediately appealable if '[it] is not a final judgment.' " *Sharpe*, 351 N.C. at 162, 522 S.E.2d at 579; *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983); *see Tridyn Indus. v. American Mut. Ins. Co.*, 296 N.C. 486, 491, 251 S.E.2d 443, 447 (1979) ("That the trial court declared it to be a final, declaratory judgment does not make it so.").

In this case, plaintiffs presented three causes of action, libel per se, class 2 libel, and libel per quod based on the essence of one statement in the union newsletter: Defendants' statement that "Plaintiffs Priest and Skinner 'stood by' while 'Jefferson . . . hire[d] non-union make-up' on the Production is false."

In granting partial summary judgment, the trial judge dismissed all claims "except any claim based upon the limited assertion that defendant Sobeck maliciously published that it was plaintiffs who stood by when Ms. Jones was hired when he knew he had approved the hire himself." Thus, the trial judge's order of partial summary

judgment essentially left in tact the plaintiffs' defamation allegations based on the statement that they "stood by" while the non-union member was hired. Accordingly, there has not been a final judgment and the plaintiffs' appeal must be dismissed as interlocutory.

### Defendants' Interlocutory Appeal

**[2]** Defendants appeal the trial court's partial denial of summary judgment. It is well settled that "[d]enial of a motion for summary judgment is not a final judgment and is generally (unless affecting a "substantial right") not immediately appealable, even if the trial court has attempted to certify it for appeal under Rule 54(b)." *First Atlantic v. Dunlea Realty*, 131 N.C. App. 242, 247, 507 S.E.2d 56, 60 (1998) (quoting *Cagle v. Teachy*, 111 N.C. App. 244, 247, 431 S.E.2d 801, 803 (1993)). In this case, the trial court's denial of summary judgment was not a final judgment. Since this appeal arises from a non-final judgment, we hold that the trial court's certification under Rule 54(b) does not render it ready for appeal.

Nonetheless, as an alternative basis for their appeal, defendants' argue the partial denial of summary judgment affects their substantial right to free speech.

> It is well settled that an interlocutory order affects a substantial right if the order "deprives the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered." "Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." . . . Nevertheless, "it is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which the appeal was sought was entered."

*Sharpe v. Worland*, 351 N.C. 159, 162-63, 522 S.E.2d 577, 580 (1999) (quoting *Cook v. Bankers Life & Cas. Co.*, 329 N.C. 488, 491, 406 S.E.2d 848, 850 (1991); *Goldston v. American Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990); *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978)).

Defendant cites two North Carolina cases, *Sherrill v. Amerada Hess Corp.*, 130 N.C. App. 714, 504 S.E.2d 802 (1998) and *Kaplan v. Prolife Action League*, 111 N.C. App. 1, 431 S.E.2d 828, 834 (1993), in which this Court held that an order affecting First Amendment free-

doms affects a substantial right sufficient to permit an immediate appeal from an interlocutory order. Both of these cases are distinguishable from the case *sub judice.*

In *Sherrill,* this Court stated that a trial court's gag order prohibiting the parties and attorneys from communicating with any person or entity not a party to the case, operated to forbid expression before it took place and constituted a prior restraint. 130 N.C. App. 714, 720, 504 S.E.2d 802, 808 (1998). In *Kaplan,* we reviewed a trial court's grant of a preliminary injunction, effective only during the trial's duration, restraining the manner and place in which defendants could picket plaintiff's home. This Court stated that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Kaplan v. Prolife Action League,* 111 N.C. App. 1, 15, 431 S.E.2d 828, 834 (1993). Both cases involved court-imposed restrictions upon the exercise of First Amendment rights prior to the resolution of the cases. These court-imposed restrictions constituted either a prior restraint or the loss of a First Amendment right for a short period of time. Thus, in *Sherrill* and *Kaplan,* we found that substantial rights were affected because of the court-imposed restrictions prohibiting the parties from exercising First Amendment rights during the pendency of the trial.

In this case, the trial court did not impose any preliminary restrictions upon the parties. Any change in defendants' behavior because of this case is self-imposed. Thus, we reject defendant's argument based on our holdings in *Sherrill* and *Kaplan.*

Defendants also argue that in cases where the *New York Times v. Sullivan* rule[1] applies, an interlocutory appeal from an order denying summary judgment is necessary to ensure that a defendant's right to free speech is adequately protected. Defendants further contend that because "the U.S. Supreme Court has long-recognized the primary importance of 'uninhibited, robust and wide-open debate' in labor disputes," interlocutory review in cases involving labor disputes and the exercise of First Amendment rights is justified in every case. We disagree.

In *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers, AFL-CIO v. Austin,* the United States Supreme Court

---

1. Defendants allude to *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53 (1966), where the Court adopted the *New York Times v. Sullivan* standard for libel cases arising out of labor disputes, requiring plaintiffs to establish that defamatory statements were made with actual malice.

stated that federal labor policy favors uninhibited, robust and wide-open debate in labor disputes. 418 U.S. 264, 272-73, 94 S.Ct. 2770, 2775 (1974). However, the Court in analyzing its prior holding in *New York Times v. Sullivan*, limited the application of this statement to a consideration of the federal labor policy, not as a basis for finding a substantial right in libel actions involving a labor union. Thus, the Court stated:

> [The] freewheeling use of the written and spoken word, we found, has been expressly fostered by Congress and approved by the NLRB. Thus, Mr. Justice Clark acknowledged that there was 'a congressional intent to encourage free debate on issues dividing labor and management,' and noted that 'the Board has given frequent consideration to the type of statements circulated during labor controversies, and . . . it has allowed wide latitude to competing parties.'
>
> The Court therefore found it necessary to impose substantive restrictions on the state libel laws to be applied to defamatory statements in labor disputes in order to prevent 'unwarranted intrusion upon free discussion envisioned by the Act.' The Court looked to the NLRB's decisions, and found that 'although the Board tolerates intemperate, abusive and inaccurate statements made by the union during attempts to organize employees, it does not interpret the Act as giving either party license to injure the other intentionally by circulating defamatory or insulting material known to be false. The Court therefore found it appropriate to adopt by analogy the standards of New York Times Co. v. Sullivan.

*Id.* (citations omitted).

Following the holding in *Old Dominion*, we conclude that under the facts of this case, the defendants have failed to show that the trial court placed any First Amendment restrictions or prohibitions upon them that affect a substantial right requiring a review of their interlocutory appeal. Accordingly, we decline to find a substantial right of the defendants has been impinged.

Dismissed.

Judge BIGGS concurs.

Judge GREENE dissents.

PRIEST v. SOBECK

[153 N.C. App. 662 (2002)]

GREENE, Judge, dissenting.

I disagree with the majority's conclusions that: (I) there was no final judgment on any of plaintiffs' claims; and (II) the partial denial of defendants' summary judgment motion did not affect their First Amendment rights.

I

A trial court's certification of an interlocutory order for appeal is proper if the order is a final judgment as to one or more claims and there is no just reason for delay. *See* N.C.G.S. § 1A-1, Rule 54(b) (2001). A claim is defined as a "cause of action." *Black's Law Dictionary* 247 (6th ed. 1990) [hereinafter *Black's*]. A cause of action is defined as "[t]he fact or facts which give a person a right to judicial redress or relief against another." *Black's* at 221; *see also Brown v. Glade Valley Sch. Inc.*, 77 N.C. App. 83, 86, 334 S.E.2d 404, 406 (1985) (the facts alleged in a complaint determine the validity of a claim, not the legal theories asserted).

In this case, plaintiffs alleged defamation under three different legal theories based on a series of statements published in two union newsletters. While the trial court did not render final judgment on any of plaintiffs' legal theories, the trial court did render summary judgment on all of plaintiffs' factual claims, except for those "based on the limited assertion that defendant . . . maliciously published that it was plaintiffs who stood by when Ms. Jones was hired, when [defendant] knew he had approved the hire himself." Thus, there was a final judgment as to one or more of plaintiffs' claims, and the trial court properly certified the interlocutory order for appeal under Rule 54(b). Accordingly, this Court should address the question raised in plaintiffs' appeal of whether the *New York Times v. Sullivan* "actual malice" standard applies to the facts of this case.

II

I also disagree with the majority's conclusion that partial denial of defendants' summary judgment motion did not affect a substantial right. Defendants contend the trial court misapplied the *New York Times v. Sullivan* "actual malice" standard, infringing on their First Amendment right to free speech. Because misapplication of the actual malice standard, detrimental to defendants, would have a chilling effect on their rights of free speech, the trial court's order does affect a substantial right. *See Sherrill v. Amerada Hess Corp.*, 130 N.C. App. 711, 719, 504 S.E.2d 802, 807 (1998) (order implicating First

Amendment rights affects a substantial right). Accordingly, this Court should also address the merits of defendants' appeal.