PAMELA PRIEST AND BETTY LOU SKINNER, PLAINTIFFS v. THOMAS SOBECK AND MAKE-UP ARTISTS AND HAIR STYLIST LOCAL 798, OF THE INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOTION PICTURE OPERATORS OF THE UNITED STATES AND CANADA, DEFENDANTS

No. COA01-1476-2

(Filed 2 September 2003)

**Libel and Slander— libel—actual malice standard—qualified privilege—union speech**

The trial court erred by denying defendants' summary judgment motion on plaintiff union members' libel claims under the actual malice standard arising out of the publication of a union newsletter and the case is remanded for entry of summary judgment in favor of defendants based on the trial court's determination that defendants were entitled to a qualified privilege for the protection of union speech, because: (1) the language in the pertinent union newsletter sought to have 100% membership by keeping non-union members from working on union films and also sought to strengthen the collective bargaining power of the union by encouraging the membership to only work with their union brothers and sisters; (2) a union's right to persuade others to join must not be stifled by the threat of liability for the over-enthusiastic use of rhetoric or the innocent mistake of fact; and (3) even assuming that plaintiffs can show that the statements

PRIEST v. SOBECK

[160 N.C. App. 230 (2003)]

were made with actual malice, plaintiffs failed to forecast sufficient evidence of actual damages when plaintiffs admit they worked after the newsletter's publication, turned down work, and cannot specify a particular production for which they were not hired due to allegedly libelous statements.

Appeals by plaintiffs and defendants from order granting partial summary judgment in favor of defendants entered 4 September 2001 by Judge Melzer A. Morgan, Jr., Superior Court, Moore County. Heard in the Court of Appeals 10 September 2002, *dismissed as interlocutory, Priest v. Sobeck,* 153 N.C. App. 662, 571 S.E.2d 75 (2002), *reversed and remanded,* 357 N.C. 159, 579 S.E.2d 250 (2003). Panel reconvened to consider appeal on merits by order dated 10 July 2003.

*Barringer, Barringer, Stephenson & Schiller by David G. Schiller and Marvin Schiller for plaintiffs.*

*Smith, James, Rowlett & Cohen by Seth R. Cohen and Stanford, Fagan & Gilito, L.L.C., by Robert S. Giolito and Jeffrey D. Sodko for defendants.*

WYNN, Judge.

This appeal returns to us for a determination on the merits following our Supreme Court's reversal of our earlier decision holding that the appeal was interlocutory. *Priest v. Sobeck,* 153 N.C. App. 662, 571 S.E.2d 75 (2002), *reversed and remanded* 357 N.C. 159, 579 S.E.2d 250 (2003). We incorporate by reference to our earlier decision, the facts relevant to this appeal. *See Priest v. Sobeck,* 153 N.C. App. 662, 571 S.E.2d 75 (2002).

Briefly, plaintiffs, members of Make-up Artists and Hairstylist Local 798 of the International Alliance Theatrical Stage Employees and Motion Picture Operators of the United States and Canada (Local 798), allege defendants, Local 798 and its representative Thomas Sobeck, committed libel in a newsletter it published and mailed to the Local 798 membership. Defendants moved for summary judgment which the trial court granted in part, and denied in part. We hold that the trial court should have granted summary judgment in favor of defendants on all of plaintiffs' claims.

In this case, both parties appeal from the trial court's order granting partial summary judgment which stated:

. . . There are no genuine issues of material fact with respect to any of the claims alleged except as to whether the defendant Sobeck with malice published in the August newsletter and subsequent newsletters that plaintiffs stood by when Henrita Jones, not a member of Local 798, was hired in mid to late June, 1999 when such hiring was actually initially approved by union representative Vincent Callaghan and when defendant Sobeck himself later allegedly approved, explicitly or implicitly, the hiring of Ms. Jones. . . . Except with respect to the hiring of Ms. Jones and defendant Sobeck's assertion that plaintiffs stood by while Ms. Jones was hired, when he allegedly knew that he had himself approved the hire, no malice has been shown on the part of the defendants as to any other factual scenario.

The trial court then ordered:

(1) partial summary judgment is granted as to any and all claims except any claim based upon the limited assertion that, after union representative Vincent Callaghan initially approved the hiring of Henrita Jones, defendant Sobeck, having himself approved, explicitly or implicitly, the hiring of Henrita Jones in mid to late June, 1999, then maliciously published that it was plaintiffs who stood by when Ms. Jones was hired when he knew he had approved the hire himself . . . .

Preliminarily, we note that because the trial court held plaintiffs to an actual malice standard, it implicitly determined a qualified privilege extended to defendants' statements. *See Bouligny, Inc. v. United Steelworkers of America, AFL-CIO*, 270 N.C. 160, 171, 154 S.E.2d 344, 354 (1967).

On appeal, plaintiffs argue defendants were not entitled to a qualified privilege and therefore the trial court erroneously required them to prove their libel claim under the actual malice standard. On the other hand, defendants argue that the trial court correctly found that they were entitled to a qualified privilege; however, defendants appeal from the trial court's failure to grant summary judgment in their favor on plaintiffs' libel claims under the actual malice standard. *See New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). Thus, the issues on appeal are: (1) whether the trial court properly found that defendants were entitled to a qualified privilege, and (2) If so, whether the trial court properly denied summary judgment on plaintiffs' claims under the actual malice standard. After careful review, we conclude the trial court properly extended a qual-

ified privilege to defendants' statements; however, we find the trial court should have granted summary judgment in favor of defendants on all of plaintiff's claims.

In *Bouligny*, our Supreme Court interpreted the United States Supreme Court's holding in *Linn v. Plant Guard Workers*, 383 U.S. 53, 15 L.Ed.2d 582 (1966) to mean that,

> the defense of qualified privilege extends to statements spoken or published in good faith by a labor union in the course of a campaign to solicit members or to establish itself as the authorized representative of the employees in a business enterprise in their collective bargaining with their employer, provided there is a reasonable relation between such objective and the statement made.

*Bouligny*, 270 N.C. at 172, 154 S.E.2d at 355. Defendants in this case apparently recognize that this language in *Bouligny* does not entitle them to a qualified privilege because their newsletter statements were neither a part of a solicitation campaign nor a part of a negotiation between the union representative and the employer. Instead, defendants allege that the statements in this case fit within the extended definition of a qualified privilege under *Old Dominion Branch No. 496, National Association of Letter Carriers, AFL-CIO, et al. v. Austin et al.*, 418 U.S. 264, 41 L.Ed. 745 (1974). We agree.

In *Letter Carriers*, the United States Supreme Court stated that while its earlier decision in *Linn* found state libel law was not completely preempted by the Nation Labor Relations Act ("NLRA"), *Linn's* partial preemption "must turn on whether the defamatory publication is made in a context where the policies of the federal labor laws leading to protection for freedom of speech are significantly implicated." *Letter Carriers*, 418 U.S. at 279, 41 L. Ed. 759. Thus,

> One of the primary reasons for the [NLRA's] protection of union speech is to insure that union organizers are free to try peacefully to persuade other employees to join the union without inhibition or restraint. Accordingly, we think that any publication made during the course of union organizing efforts, which is arguably relevant to that organizational activity, is entitled to the protection of *Linn*. We see no reason to limit this protection to statements made during representation election campaigns. . . . Unions have a legitimate and substantial interest in continuing organizational efforts after recognition. Whether the goal is merely to strengthen

or preserve the union's majority, or is to achieve 100% employee membership . . . these organizing efforts are equally entitled to the protection of § 7 and § 1.

*Id.*

In this case, the union published a newsletter to its members urging the members to hire their "brothers and sisters" over non-union members and noting that non-union members were hired on "Shake Rattle and Roll." The newsletter alleged that plaintiffs "stood by" as this happened. It further urged the membership to file complaints against these "not-thinking members" [sic] and write their business agent to advise him how the membership wants him to deal with this problem.

We hold that the language in the subject newsletter falls under *Letter Carriers'* expanded definition of the defense of qualified privilege. It seeks to have 100% membership by keeping non-union members from working on union films. It also seeks to strengthen the collective bargaining power of the union by encouraging the membership to only work with their union brothers and sisters. A union's right to "persuade others to join must not be stifled by the threat of liability for the over-enthusiastic use of rhetoric or the innocent mistake of fact." *Id.* at 277, 41 L. Ed. 758. (Citations omitted.) Accordingly, we uphold the trial court's determination that defendants' statements were entitled to a qualified privilege.

Having determined the defendants were entitled to a qualified privilege, we now address defendants' contention that the plaintiffs' forecast of evidence was insufficient to create a genuine issue of material fact as to whether defendants acted with actual malice.

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Martin Architectural Products v. Meridian Construction,* 155 N.C. App. 176, 180, 574 S.E.2d 189, 191 (2002). To justify summary judgment, the movant must show one of the following three grounds:

(1) an essential element of plaintiff's claim is nonexistent . . . (2) plaintiff cannot produce evidence to support an essential element

of his claim, or . . . (3) plaintiff cannot surmount an affirmative defense which would bar the claim.

*Clark v. Brown*, 99 N.C. App. 255, 260, 393 S.E.2d 134, 136-37 (1990).

In this case, since defendants' statements were protected by a qualified privilege, the subject "publication is not actionable for libel in the absence of actual malice." *Raymond U. v. Duke Univ.*, 91 N.C. App. 171, 181, 371 S.E.2d 701, 708 (1988). Thus, plaintiffs' evidence must show a genuine issue of material fact as to whether defendants' allegedly defamatory statements were made with knowledge that the statements were false or with a reckless disregard for the truth in order to preclude summary judgment in favor of defendants. Furthermore, judgment for the plaintiffs in such an action may be rendered only if the plaintiffs allege and prove not only the actual malice sufficient to overcome the qualified privilege allowed the union by the law of this State but also some actual damage resulting from the libelous publication. *Bouligny*, 270 N.C. at 176, 154 S.E.2d at 357-58.

In this case, even assuming that plaintiffs can show that the statements were made with actual malice, the record shows that plaintiffs failed to forecast sufficient evidence of actual damages. Indeed, plaintiffs admit they worked after the newsletter's publication, turned down work, and cannot specify a particular production for which they were not hired due to the allegedly libelous statements. Accordingly, we summarily hold that defendants were entitled to summary judgment on all of plaintiffs' claims.

In sum, we reverse the court's denial of summary judgment on this claim and remand for entry of summary judgment in favor of defendants.

Affirmed in part, reversed and remanded in part.

Judges MARTIN and McGEE concur.