DENISE MATHIS AND ALAN MATHIS, PLAINTIFFS v. CONSTANCE DALY, ET AL., DEFENDANTS

No. COA09-1696

(Filed 6 July 2010)

**Appeal and Error— interlocutory orders and appeals—denial of summary judgment motion—defamation—failure to establish substantial right**

Defendant's appeal from the trial court's interlocutory order denying her motion for summary judgment in an action seeking compensation for alleged defamatory statements following plaintiff's termination of employment was dismissed. There was no N.C.G.S. § 1A-1, Rule 54(b) certification, and defendant failed to establish she was a limited purpose public figure in order to establish a substantial right implicating her First Amendment rights.

Judge WYNN concurring in result in separate opinion.

Appeal by defendant from order entered 1 October 2009 by Judge Nathaniel J. Poovey in Haywood County Superior Court. Heard in the Court of Appeals 25 May 2010.

*McLean Law Firm, P.A., by Russell L. McLean, III, and Lisa A. Kosir, PLLC, by Lisa A. Kosir, for plaintiff-appellee.*

*Everett Gaskins Hancock & Stevens, LLP, by C. Amanda Martin, for defendant-appellant Constance Daly.*

CALABRIA, Judge.

Constance Daly ("defendant") appeals the trial court's order denying her motion for summary judgment. We dismiss the appeal as interlocutory.

## I. Background

Defendant was president of the Board of Directors ("the Board") of the Haywood County Council on Aging ("the HCCA"). Denise Mathis ("plaintiff") was first employed by the HCCA in 1999. On 3 February 2004, the Board changed plaintiff's job title to CEO/Executive Director of the HCCA.

In September 2004, Haywood County experienced severe flooding as a result of Hurricanes Frances and Ivan. As a result, Governor Michael Easley designated disaster relief funds to Haywood County. In order to receive these funds, Haywood County was required to form an "Unmet Needs Committee" to distribute the relief funds through the Haywood County Finance Office.

In October 2004, the HCCA submitted requests to several agencies for flood relief funds. The HCCA received funds from several sources, including a grant of $65,000 from the United Way of Haywood County. While plaintiff was administering these flood relief funds, the HCCA experienced severe financial difficulties. After questions arose as to whether plaintiff mismanaged or otherwise misappropriated funds, the Board terminated plaintiff from employment. Plaintiff sought unemployment compensation from the Employment Securities Commission ("the ESC").

Following plaintiff's dismissal, the Haywood County District Attorney investigated plaintiff's financial management of the HCCA. As a result, on 7 August 2006, plaintiff was indicted on fourteen counts of embezzlement. The State later dismissed these charges. However, while the investigation and charges were still pending, members of the Board spoke to several local newspapers regarding plaintiff's financial management of the HCCA.

On 12 February 2007, plaintiff and her husband, Alan Mathis, instituted an action in Haywood County Superior Court against defendant and others (collectively "the trial defendants") seeking compensation for, *inter alia*, defamatory statements made about plaintiff following plaintiff's termination of employment. The trial defendants filed an answer on 13 April 2007, which asserted fourteen affirmative defenses, including a defense, based upon the U.S. Constitution, that plaintiff was "either a public official, a public figure, or a limited purpose public figure when the allegedly defamatory statements were made."

On 5 August 2009, defendant separately filed a motion for summary judgment. After a hearing on the motion, the trial court entered an order denying defendant's motion on 1 October 2009. Defendant appeals.

## II. Interlocutory Appeal

As an initial matter, we note that defendant appeals from an interlocutory order. "An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy." *N.C. Dept. of Transp. v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995).

> An appeal from an interlocutory order is permissible only if (1) the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review. The burden rests on the appellant to establish the basis for an interlocutory appeal.

*Dailey v. Popma*, 191 N.C. App. 64, 67-68, 662 S.E.2d 12, 15 (2008) (internal quotations and citations omitted). There is no Rule 54(b) certification in the instant case, and therefore immediate appeal of the trial court's order is only permitted if the order affects a substantial right.

Defendant argues that the trial court's order denying her motion for summary judgment affects defendant's rights under the First Amendment to the United States Constitution. Defendant is correct that this Court has previously held that "[a]n order implicating a party's First Amendment rights affects a substantial right." *Sherrill v. Amerada Hess Corp.*, 130 N.C. App. 711, 719, 504 S.E.2d 802, 807 (1998). However, defendant has failed to establish that her First Amendment rights were implicated in the instant case.

Our Courts have made clear that there are limited circumstances when an action based upon alleged defamatory speech is "elevated from a state's common law to having at least some guarantees of protection under the First Amendment of the Constitution." *Neill Grading & Constr. Co. v. Lingafelt*, 168 N.C. App. 36, 42, 606 S.E.2d 734, 738 (2005). "Generally, this degree of First Amendment protection is governed by two factors: first, the individual capacity of the plaintiff; and, second, the content of the speech." *Id.*

"[T]he First Amendment sets limits on a public figure's ability to recover for defamation." *Wells v. Liddy*, 186 F.3d 505, 532 (4th Cir.

MATHIS v. DALY

[205 N.C. App. 200 (2010)]

1999). "[A] defamation plaintiff who is a public official or public figure 'may recover injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth[.]' " *Gaunt v. Pittaway*, 139 N.C. App. 778, 785, 534 S.E.2d 660, 665 (2000) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 41 L. Ed. 2d 789, 807, 94 S. Ct. 2997, 3008 (1974)). However, "where the plaintiff is a private figure, and the speech at issue is of private concern, a state court is free to apply its governing common law without implicating First Amendment concerns." *Neill*, 168 N.C. App. at 43, 606 S.E.2d at 739.

A. Limited Purpose Public Figure

Defendant argues that, for purposes of defendant's alleged defamatory statements, plaintiff is a limited purpose public figure, and therefore, this case implicates the First Amendment. We disagree.

[A] limited purpose public figure is one who voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues . . . [T]he Supreme Court developed a two-part inquiry for determining whether a defamation plaintiff is a limited purpose public figure: (1) was there a particular "public controversy" that gave rise to the alleged defamation and (2) was the nature and extent of the plaintiff's participation in that particular controversy sufficient to justify "public figure" status?

*Gaunt*, 139 N.C. App. at 785, 534 S.E.2d at 665 (internal quotations and citations omitted). "Under North Carolina law, an individual may become a limited purpose public figure by his purposeful activity amounting to a thrusting of his personality into the 'vortex' of an important public controversy." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 34, 568 S.E.2d 893, 900-01 (2002) (internal quotations and citations omitted).

In support of treating plaintiff as a limited purpose public figure, defendant states that plaintiff "repeatedly testified about the community impact from the floods, the central role played by the Council on Aging in dealing with the floods, and her role as the leader of that effort." Defendant then quotes plaintiff's testimony before the ESC:

I, back in 2004 I was the one who initially got this unmet needs, I, along with one other person, got this unmet needs committee

together. I was the one initially that went out and, and helped with the flood relief. I went to the governor's office on two occasions to appeal that Western North Carolina receive funds. So I, I'm probably more aware than anybody about these things. . . . [By early 2006] We had already at the time of February the 9th already administered either through the county or the Council on Aging over $700,000 to flood victims. . . . We were the leaders from flood, of flood relief.

Assuming, *arguendo*, that the flood relief effort was an important public controversy, defendant has failed to establish that plaintiff's involvement in the flood relief effort "gave rise to the alleged defamation." *Gaunt*, 139 N.C. App. at 785, 534 S.E.2d at 665. The defamatory statements alleged in plaintiff's complaint related to plaintiff's financial management of the HCCA, plaintiff's interactions with the Board regarding the financial matters of the HCCA, plaintiff's dismissal by the Board as a result of her financial management of the HCCA, and plaintiff's testimony before the ESC as a result of her dismissal. The alleged defamatory statements did not pertain to plaintiff's role in securing and providing flood relief to Haywood County. Any alleged defamatory statements pertaining to the flood relief funds were limited to plaintiff's alleged inability to manage these funds within the HCCA once they were received. Since the alleged defamatory statements applied only to plaintiff's private management of the finances of the HCCA, defendant has failed, for purposes of this appeal, to demonstrate that plaintiff was a limited purpose public figure.

B. Issue of Public Concern

If a plaintiff in a defamation action is not a public figure, "[t]he question then becomes whether the First Amendment is implicated by [defendant's] statements . . . because the content of those statements are a matter [sic] 'public concern' where the First Amendment requires some degree of fault." *Neill*, 168 N.C. App. at 44, 606 S.E.2d at 740. The *Neill* Court held that "[whether] . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record." *Id.* at 45, 606 S.E.2d at 740 (internal quotations and citations omitted).

*Neill* is the only case in our Courts that has analyzed what constitutes a matter of public concern in defamation actions. In *Neill*, the defendant was alleged to have made defamatory statements attributing the appearance of sinkholes in the parking lot of a local restaurant in Hickory, North Carolina to the construction work of the plain-

tiff. *Id.* at 39, 606 S.E.2d at 736-37. This Court determined that the defamatory statements at issue addressed a matter of public concern based upon a number of factors, including, *inter alia*: (1) that the sinkholes were discussed throughout the community, nationally on CNN and Fox News and internationally; (2) that the sinkholes were a matter of public study, as they were discussed at the Western Piedmont Council of Government, at North Carolina State University and the University of North Carolina at Charlotte; and (3) that the Hickory Visitors Bureau received calls from as far away as Michigan asking how to find the sinkholes. *Id.* at 45-46, 606 S.E.2d at 740-41.

In the instant case, defendant has failed to present evidence of anything resembling the extensive amount of public interest that was present in *Neill*. In fact, defendant has failed to specifically address the issue of whether the alleged defamatory statements addressed matters of public concern. The phrase "public concern" does not appear in defendant's brief; the closest approximation is defendant's statement, which does not cite to any portion of the record on appeal, that "the speech relates to issues that still are actively before the public eye, in the public dialogue and in the public courts." This bare statement is insufficient to establish that the alleged defamatory statements, which, as previously noted, applied only to plaintiff's private management of the finances of the HCCA, addressed matters of public concern. As a result, defendant has failed to establish that the trial court's order denying summary judgment implicated defendant's First Amendment rights and this interlocutory appeal is therefore not properly before this Court.

Moreover, even assuming, *arguendo*, that the alleged defamatory statements involved matters of public concern, this interlocutory appeal would still be improper. The *Neill* Court made clear that "North Carolina's standard of fault for speech regarding a matter of public concern, where the plaintiff is a private individual, is negligence." *Id.* at 47, 606 S.E.2d at 741. The Court then analyzed whether the potential misapplication of this negligence standard would affect a substantial right:

> [W]here the content is a matter of public concern, we do not believe the dissemination of information regarding a private individual is of a kind benefitted by the uninhibited, robust, and wide-open speech we see promoted by the actual malice standard of fault for public officials or public figures. Thus, we are not concerned that a trial court's application of the negligence standard of fault, beyond the stage of summary judgment, would have a

chilling effect on free speech where the substance of the defamatory statement makes substantial danger to reputation apparent. The negligence standard of fault does, and we believe should, provide its own cooling and deliberative effect on the kind of speech at issue in this case.

*Id.* at 48, 606 S.E.2d at 742 (internal quotations and citations omitted). Consequently, the Court dismissed the appeal as interlocutory, because "finding a substantial right where it would not further any First Amendment protection would unnecessarily weigh against North Carolina's constitutional mandate that its courts of justice protect the otherwise good names of its private citizens." *Id.* Therefore, once defendant in the instant case failed to establish that plaintiff is a limited purpose public figure, she could not establish a substantial right that entitled her to an immediate appeal, regardless of whether the speech addressed a matter of public concern. Pursuant to the holding in *Neill*, defendant's appeal necessarily must be dismissed.

### III. Conclusion

Defendant has failed to meet her burden to establish the basis for an interlocutory appeal, and so this appeal must be dismissed.

Dismissed.

Judge HUNTER, Robert C. concurs.

Judge WYNN concurs in the result by separate opinion.

WYNN, Judge, concurring in the result.

I agree with the majority that Defendant has failed to demonstrate that the order here affects a substantial right that would be lost without immediate review. I write separately because I believe it is not necessary for this Court to determine whether Defendant's prior statements are entitled to First Amendment protection. *See Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) ("[T]he courts of this State will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.").

"[W]hen First Amendment rights are threatened or impaired by an interlocutory order, immediate appeal is appropriate." *Harris v. Matthews*, 361 N.C. 265, 270, 643 S.E.2d 566, 569-70 (2007). Cases that have allowed immediate appeal of an interlocutory order on the basis

of alleged violations of the First Amendment generally involve ongoing prejudice to that right. *See Sherrill v. Amerada Hess Corp.*, 130 N.C. App. 711, 719, 504 S.E.2d 802, 807 (1998) (preliminary gag order); *Kaplan v. Prolife Action League of Greensboro*, 111 N.C. App. 1, 15, 431 S.E.2d 828, 834 (preliminary injunction against protest), *appeal dismissed, disc. review denied*, 335 N.C. 175, 436 S.E.2d 379 (1993), *and cert. denied*, 512 U.S. 1253, 129 L. Ed. 2d 894 (1994).

An exception exists where a party distinctly contends that the trial court misapplied a constitutional standard. *Priest v. Sobeck*, 153 N.C. App. 662, 670, 571 S.E.2d 75, 81 (2002) (Greene, J., dissenting) (misapplication of the proper standard would have a chilling effect on First Amendment rights), *rev'd for reasons stated in dissent*, 357 N.C. 159, 579 S.E.2d 250 (2003); *see also Boyce & Isley, PLLC v. Cooper*, 169 N.C. App. 572, 577, 611 S.E.2d 175, 178 (2005) (noting that *Priest* dissent did not consider whether substantial right would be lost absent immediate appeal). The case relied upon by the majority is in this line. *See Neill Grading & Const. Co. v. Lingafelt*, 168 N.C. App. 36, 47, 606 S.E.2d 734, 741 ("[W]e examine whether misapplication of the 'negligence' standard of fault for a defendant's speech . . . would have a chilling effect on defendant's rights . . . ."), *disc. review improvidently allowed*, 360 N.C. 172, 622 S.E.2d 490 (2005).

Neither of these circumstances appears in this case. Defendant does not allege that the trial court misapplied a constitutional standard. Rather, Defendant argues that "[t]he pendency of this libel suit has the very chilling effect recognized by the U.S. Supreme Court and will operate in a similar fashion to a gag order or prior restraint." Be that as it may, the trial court issued no injunction or any other order that could operate like a prior restraint. Indeed, the alleged defamatory statements were published in 2006 and 2007, and nothing prevents Defendant from continuing to exercise to the fullest her First Amendment rights. Consequently, "there is nothing here to suggest an immediate loss of these rights." *Boyce*, 169 N.C. App. at 577, 611 S.E.2d at 178. I therefore concur in the dismissal of this appeal.