Dillon, Judge.
*791 *374 Respondents appeal from an order adjudicating their minor child K.G. ("Ken") to be a dependent juvenile and continuing Ken's custody with the Orange County Department of Social Services ("DSS").[1] We hold the trial court erred in denying Respondents' motion to dismiss the juvenile petition pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.
Ken is the oldest of Respondents' five children and has a history of running away from home, unruly and defiant behavior at home, resistance to Respondents' authority, and involvement with the North Carolina Juvenile Justice System.
In January 2017, juvenile delinquency petitions were filed against Ken alleging he had committed a number of offenses, including felony larceny. Ken admitted to committing misdemeanor larceny and misdemeanor possession of stolen goods, and the State dismissed the felony charge. Based on Ken's admissions, the juvenile delinquency court entered an order adjudicating Ken to be a delinquent juvenile. In its disposition order entered that same day, the court found Ken's delinquency history was low and entered a Level 1 disposition. The court placed Ken on supervised probation for 12 months with a number of conditions.
In May 2017, Ken was arrested and charged as an adult for felony safecracking and felony larceny of Respondents' property. In an attempt to allow Ken to be released from jail, the Assistant Public Defender in his delinquency case filed a motion seeking the appointment of a guardian of the person for Ken. In June 2017, after a hearing on the matter, *375 the trial court entered an order that awarded custody of Ken to DSS and granted DSS placement authority for Ken. DSS initially placed Ken with his grandparents, but within a few weeks, the grandparents indicated they could no longer serve as a placement for him because he had attempted to obtain their ATM and cellphone PIN numbers. DSS then placed Ken at a youth shelter known as the "Wrenn House" and afterwards to the Boys and Girls Home in Lake Waccamaw.
DSS instituted a dependency proceeding and alleged Ken to be a dependent juvenile based on the following facts:
1. [DSS] received a report 6/5/17 regarding the juvenile, who was and is incarcerated at the Orange County Jail. He has been in jail for approximately 1 month due to stealing money out of his parents' safe. During a criminal court appearance, the juvenile refused to return to his parents' home.
2. The child has a history of stealing and a possible addiction to gaming. The parents did not want the child to go to Wrenn House as he would [have] access to computers and/or games[,] nor with relatives because he would likely steal from them. The family wanted the child to return home, but the child refuses.
3. During [juvenile delinquency] court on 6/6/17, the judge ordered the juvenile into DSS custody.
4. [DSS] has had one prior CPS report regarding the family received 11/5/16. The report alleged improper care, discipline, and supervision. Per the report, the juvenile has a history of running away. He stole money from his parents and the reporter alleged that the child was kicked out of the house and sleeping in a tent outside without provisions.
5. During the CPS assessment it was found that the juvenile does have a history of running away and accessing pornography via electronic devices. When the electronic devices are taken away, the juvenile runs away from the home. The parents report all incidences of the child running away to law enforcement. The parents admitted to trying numerous different tactics to manage the juvenile's behaviors and tried to modify his behavior by having the juvenile stay in a tent. They were allowing *792 the *376 child to come inside at meal times and after finishing his chores and homework. During the CPS assessment, the parents stopped having the juvenile stay in the tent and the parents sought services through [the Department of Juvenile Justice] to help manage the child's behavior. Due to the parents' willingness to seek services for the child and agreement to ensure the juvenile's basic needs were met, ongoing services were not warranted and the case was closed.
Respondents filed a Rule 12(b)(6) motion to dismiss the petition, arguing the allegations in the petition, even if true, could not support an adjudication that Ken was a dependent juvenile. See N.C. R. Civ. P. 12(b)(6). In September 2017, after hearings on the matter, the trial court entered an order denying Respondents' motion to dismiss and adjudicating Ken to be a dependent juvenile. The court continued custody of Ken with DSS and imposed other conditions. Respondents filed timely notice of appeal from the court's order.
We first address Respondents' argument that the trial court erred in denying their Rule 12(b)(6) motion to dismiss.
On appeal from a motion to dismiss under Rule 12(b)(6), this Court reviews de novo whether, as a matter of law, the allegations of the complaint ... are sufficient to state a claim upon which relief may be granted. We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim.
In re J.S.K. , --- N.C. App. ----, ----, 807 S.E.2d 188, 190 (2017) (internal citations and quotation marks omitted).
Here, taking the allegations in the petition as true, we agree with Respondents that the petition fails to allege Ken is a dependent juvenile. A dependent juvenile is defined as:
A juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.
*377 N.C. Gen. Stat. § 7B-101(9) (2017). Respondents are Ken's biological parents with whom he lived prior to his arrest on felony charges and thus were responsible for Ken's care and supervision. Therefore, to survive Respondent's Rule 12(b)(6) motion, the petition must set forth allegations that Respondents were unable to provide for Ken's care or supervision and lacked an appropriate alternative child care arrangement.
We conclude that none of the allegations in the petition, taken as true, suggest that Respondents were unable to provide for Ken's care or supervision or lacked an appropriate alternative child care arrangement. Rather, the allegations at best establish that Ken is a delinquent or undisciplined juvenile, see N.C. Gen. Stat. § 7B-1501(7), (27) (2017), matters to be addressed in his pending juvenile delinquency court cases, and that Respondents were working with juvenile justice officials to obtain services for Ken.
DSS and the guardian ad litem argue that Respondents' failure to rein in Ken's behavior and Ken's refusal to return to their home rendered them "unable" to care for him. We do not look, however, to the juvenile's willful acts to determine a parent's ability to care for the juvenile, because doing so would necessarily require every undisciplined juvenile to be adjudicated a dependent juvenile. Respondents remained willing and able to care for and supervise Ken, and Ken's unwillingness to return to their custody cannot negate that fact.
Accordingly, we reverse the trial court's adjudication and disposition order and remand for entry of an order dismissing the petition. We note that because DSS may retain lawful custody of Ken pursuant to the order entered in his delinquency case, our holding in this case may not require that custody of Ken be returned to Respondents. See N.C. Gen. Stat. § 7B-2506 (2017) ; see also In re K.T.L. , 177 N.C. App. 365, 375, 629 S.E.2d 152, 159 (2006) (affirming the placement of a juvenile in DSS custody where the juvenile delinquency court found the juvenile's *793 parents were unwilling to consent to the level of evaluation juvenile needed).
REVERSED AND REMANDED.
Judges DAVIS and BERGER concur.

We use the pseudonym "Ken" throughout for ease of reading and to protect the juvenile's privacy.