HAMPSON, Judge.
 

 *605
 

 Factual and Procedural Background
 

 Gavin Suarez (minor Plaintiff), by and through his Guardian
 
 ad Litem
 
 , and his parents, Eric and Jean Suarez, (collectively, Plaintiffs) appeal from the trial court's Order dismissing their
 
 *606
 
 Complaint against the Town of Swansboro (Town).
 
 [1]
 
 The Record before us tends to show the following:
 

 On 21 June 2017, Plaintiffs filed a Complaint against the Town and ARC.
 
 [2]
 
 The Complaint alleged, in relevant part, that the Town, a North Carolina municipal corporation, owned the Swansboro Skate Park (Skate Park). In the fall of 2011, the Town sent out an invitation for proposals for the construction of a skateboarding park. The Town specifically requested skateboarding ramps be made of "stainless steel or other corrosion resistant material" and indicated that the ramps would "be installed by the Public Works Department of [the Town], under the direction of a certified playground safety inspector who is a Town Employee."
 

 The Town contracted with ARC to design, manufacture, and sell to the Town skateboarding ramps for the Skate Park. The Complaint further alleged the Town and
 
 *888
 
 ARC agreed to the sale and purchase of the ramps containing a "heat-attractive surface" and did so knowing the Skate Park was located in a hot-climate area with a lack of natural shade and in direct sunlight, presenting the risk of potential burn injuries. In December 2011, an employee or agent of ARC inspected the installed ramps. However, this inspection did not include any checks related to hazards of burn injuries or overheating of the ramps. Plaintiffs alleged ARC and the Town willfully and wantonly chose not to inspect the ramps installed at the Skate Park for "burn injury potential." The Skate Park opened in early 2012. While the Town posted signs at the Skate Park, none of these signs warned visitors that the ramps may become hot enough to cause burn injuries. As such the Complaint alleged: "Pursuant to N.C. Gen. Stat. § 99E-25(c)(1) ... [the Town] ... failed to guard against or warn of a dangerous condition of which guests and participants at the Skate Park did not have notice and cannot reasonably be expected to have notice."
 

 On 14 August 2014, the minor Plaintiff and his older brother were being supervised by their babysitter, Hess. It was a nice warm summer day, and Hess took the children to the municipal park where the Skate Park was located. When they arrived, the Skate Park was not being used. The minor Plaintiff's older brother wanted to see the Skate Park, and
 
 *607
 
 Hess allowed the children to explore the Skate Park. The group had only been in the Skate Park for a matter of minutes when the minor Plaintiff (then just shy of 18 months old) followed his older brother up a ramp and fell. The minor Plaintiff immediately began screaming and crying. Hess took the child to a bathroom to clean up and observed the skin on his hands and both of his legs had bubbled up into large blisters. Hess ultimately took the minor Plaintiff to Carteret General Hospital where the minor Plaintiff's mother worked. The minor Plaintiff was subsequently transferred by helicopter to the UNC Hospital Pediatric Burn Department.
 

 The Complaint alleged the Plaintiffs suffered damages as a result of the minor Plaintiff's burn injuries caused by the hot ramp. It further alleged Plaintiffs and Hess did not have and could not have had notice of the hazardous condition at the Skate Park. Plaintiffs asserted claims against both ARC and the Town. Against the Town specifically, Plaintiffs claimed both negligence and gross negligence by the Town, grounded in allegations of failure to warn, failure to inspect and maintain, and failure to take corrective measures or precautions to prevent hot skateboarding ramps.
 

 On 1 September 2017, ARC filed its Answer. In its Answer, ARC raised several defenses, including,
 
 inter alia
 
 , the possibility of intervening negligence of a third party. The third party in question, Hess, was served with summons as a third-party defendant. On 19 July 2018, the Town filed an Amended Answer, which included a Motion to Dismiss asserting "Plaintiffs' Complaint fails to establish jurisdiction over the Town and fails to state a claim against the Town upon which relief may be granted" pursuant to Rule 12 of the North Carolina Rules of Civil Procedure. Town also raised the defenses of the intervening negligence of Hess, the contributory negligence of the minor Plaintiff, and governmental immunity, among others.
 

 The Town's Motion to Dismiss came on for hearing on 13 August 2018 in Onslow County Superior Court. At this hearing, the Town argued (1) it was entitled to immunity from suit under the provisions of N.C. Gen. Stat. § 99E-21
 
 et seq
 
 ., which provide certain protections for governmental operators of skateboarding parks; and (2) alternatively, Plaintiffs' Complaint failed to plead essential elements of a premise-liability claim against the Town to support either negligence or gross-negligence claims. On 4 September 2018, the trial court entered its Order granting the Town's Motion to Dismiss "pursuant to [ Rule] 12(b)(1) and/or (6) [.]" The trial court dismissed all claims against the Town with prejudice. Plaintiffs filed Notice of Appeal on 25 September 2018.
 

 *608
 

 Appellate Jurisdiction
 

 As an initial matter, we must determine whether this appeal is properly before us. As Plaintiffs acknowledge, this appeal is interlocutory because it leaves Plaintiffs' claims
 
 *889
 
 against ARC pending.
 
 See, e.g.
 
 ,
 
 Cunningham v. Brown
 
 ,
 
 51 N.C. App. 264
 
 , 266,
 
 276 S.E.2d 718
 
 , 721 (1981) (holding that "[a]n order which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is interlocutory and generally not appealable). The Town, in turn, has filed a Motion to Dismiss the Appeal on this basis.
 

 "Generally, there is no right of immediate appeal from interlocutory orders and judgments."
 
 Sharpe v. Worland
 
 ,
 
 351 N.C. 159
 
 , 161,
 
 522 S.E.2d 577
 
 , 578 (1999) (citations omitted). "Notwithstanding this cardinal tenet of appellate practice, immediate appeal of interlocutory orders and judgments is available in at least two instances."
 
 Id.
 
 at 161,
 
 522 S.E.2d at 579
 
 . First, under N.C.R. Civ. P. 54(b), "immediate review is available when the trial court enters a final judgment as to one or more, but fewer than all, claims or parties and certifies there is no just reason for delay."
 
 Id.
 
 at 161-62,
 
 522 S.E.2d at 579
 
 (citations omitted). Here, the trial court did not include a Rule 54(b) certification in its Order.
 
 [3]
 

 Second, "immediate appeal is available from an interlocutory order or judgment which affects a 'substantial right.' "
 
 Id
 
 . at 162,
 
 522 S.E.2d at 579
 
 (citations omitted). "[A]n interlocutory order affects a substantial right if the order 'deprive[s] the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered.' "
 

 Id.
 

 (alteration in original) (citation omitted) (quoting
 
 Cook v. Bankers Life & Cas. Co.
 
 ,
 
 329 N.C. 488
 
 , 491,
 
 406 S.E.2d 848
 
 , 850 (1991) ). Here, Plaintiffs contend the possibility of inconsistent verdicts on overlapping factual issues against the two Defendants in this case is such a substantial right.
 

 "[T]he right to avoid the possibility of two trials
 
 on the same issues
 
 can be ... a substantial right."
 
 See
 

 Green v. Duke Power Co.
 
 ,
 
 305 N.C. 603
 
 , 608,
 
 290 S.E.2d 593
 
 , 596 (1982) (alteration in original) (citation and quotation marks omitted). We have explained:
 

 This general proposition is based on the following rationale: when common fact issues overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the
 
 *609
 
 appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn "creat[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue."
 

 Davidson v. Knauff Ins. Agency
 
 ,
 
 93 N.C. App. 20
 
 , 25,
 
 376 S.E.2d 488
 
 , 491 (1989) (alteration in original) (citation omitted) (quoting
 
 Green
 
 ,
 
 305 N.C. at 608
 
 ,
 
 290 S.E.2d at
 
 596 ).
 

 Here, Plaintiffs identify a number of potentially overlapping factual issues that may result in inconsistent verdicts should they be required to pursue separate trials against the Town and ARC, which they maintain affects a substantial right. We agree with Plaintiffs. At a minimum, separate trials would potentially raise inconsistencies in issues of both causation and damages. This gives rise to a substantial right allowing for an immediate appeal.
 
 See
 

 Bernick v. Jurden
 
 ,
 
 306 N.C. 435
 
 , 439,
 
 293 S.E.2d 405
 
 , 409 (1982) ("[T]he plaintiff's right to have one jury decide whether the conduct of one, some, all or none of the defendants caused his injuries is indeed a substantial right."). In particular, we note a key issue in any trial against both Defendants will be the intervening or superseding negligence of Hess, and different juries could reach inconsistent verdicts on that question.
 
 Cf.
 

 Hoots v. Pryor
 
 ,
 
 106 N.C. App. 397
 
 , 402,
 
 417 S.E.2d 269
 
 , 273 (1992) (holding that a scenario where one trial might find a party contributorily negligent while another might not creates a substantial risk of inconsistent verdicts). Therefore, we conclude Plaintiffs' interlocutory appeal is properly before us as affecting a substantial right. Thus, we deny the Town's Motion to Dismiss the Appeal.
 

 Issues
 

 The dispositive issues in this case are: (I) Whether Plaintiffs' Complaint states claims
 
 *890
 
 against the Town sufficient to withstand the special liability provisions of N.C. Gen. § 99E-21
 
 et seq.
 
 ; (II) Whether Plaintiffs adequately alleged the Town knew or should have known of the hazardous condition caused by the hot metal ramp; and (III) Whether the Plaintiffs adequately alleged claims for gross negligence sufficient to withstand the Town's Motion to Dismiss.
 

 Standard of Review
 

 The trial court's Order states the Town's Motion to Dismiss was based on N.C.R. Civ. P. "12(b)(1) and/or (6)." However, the Order does not identify the particular rule or rules upon which it actually based its dismissal. "While we apply a
 
 de novo
 
 standard when reviewing either a
 
 *610
 
 Rule 12(b)(1) or 12(b)(6) dismissal, identifying the precise civil procedure rule underlying a dismissal is critical because it dictates our scope of review."
 
 Holton v. Holton
 
 , --- N.C. App. ----, ----,
 
 813 S.E.2d 649
 
 , 654 (2018). The primary difference is that "[u]nlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation of a Rule 12(b)(1) motion to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing."
 
 Cunningham v. Selman
 
 ,
 
 201 N.C. App. 270
 
 , 280,
 
 689 S.E.2d 517
 
 , 524 (2009) (citation and quotation marks omitted).
 

 Here, it is apparent the trial court limited its consideration to the face of the Complaint in compliance with Rule 12(b)(6). Moreover, to the extent the trial court perceived the Town's Motion to Dismiss as raising an immunity defense, our Courts generally recognize immunity as a defense that can be raised under Rules 12(b)(1), 12(b)(2), or 12(b)(6).
 
 [4]
 

 See generally
 

 Meherrin Indian Tribe v. Lewis
 
 ,
 
 197 N.C. App. 380
 
 ,
 
 677 S.E.2d 203
 
 (2009). In any event, as discussed herein, we determine the Town's Motion to Dismiss did not implicate an immunity defense and thus did not implicate subject-matter jurisdiction under Rule 12(b)(1). In addition, the trial court dismissed Plaintiffs' claims "with prejudice," which further indicates it was relying on Rule 12(b)(6) and not Rule 12(b)(1).
 
 See
 

 Holton
 
 , --- N.C. App. at ----,
 
 813 S.E.2d at 655
 
 (dismissal under Rule 12(b)(1) is without prejudice (citation omitted)). It follows then that the trial court's dismissal in this case was premised on Rule 12(b)(6), and we review this matter as such.
 

 "The standard of review of an order granting a [ Rule] 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true."
 
 Gilmore v. Gilmore
 
 ,
 
 229 N.C. App. 347
 
 , 350,
 
 748 S.E.2d 42
 
 , 45 (2013) (alteration in original) (citation and quotation marks omitted). "On appeal, we review the pleadings
 
 de novo
 
 to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct."
 
 Id
 
 . (citation and quotation marks omitted).
 

 *611
 

 Analysis
 

 I. N.C. Gen. Stat. § 99E-21
 
 et seq
 
 .
 

 The primary issue argued before both the trial court and this Court is whether Article 3 of Chapter 99E of our General Statutes, entitled "Hazardous Recreation Parks Safety and Liability" (Hazardous Recreational Activities Act), serves as a complete bar to Plaintiffs' Complaint.
 
 See
 
 N.C. Gen. Stat. § 99E-21
 
 et seq.
 
 (2017). The Town contends the Hazardous Recreational Activities Act serves as a complete immunity defense to Plaintiffs' claims akin to governmental or sovereign immunity. We disagree.
 

 The Hazardous Recreational Activities Act serves to limit the liability of governmental entities operating skateboard parks used for skateboarding, inline skating, or freestyle bicycling.
 
 [5]
 
 Its stated purpose
 

 *891
 
 is to encourage governmental owners or lessees of property to make land available to a governmental entity for skateboarding, inline skating, or freestyle bicycling. It is recognized that governmental owners or lessees of property have failed to make property available for such activities because of the exposure to liability from lawsuits and the prohibitive cost of insurance, if insurance can be obtained for such activities. It is also recognized that risks and dangers are inherent in these activities, which risks and dangers should be assumed by those participating in those activities.
 

 N.C. Gen. Stat. § 99E-21 (2017).
 

 This purpose is carried out in two ways. First, the Statutes impose duties upon those engaged in "hazardous recreational activities"-"Any person who participates in or assists in hazardous recreational activities assumes the known and unknown inherent risks in these activities, irrespective of age, and is legally responsible for all damages, injury, or death to himself or herself or other persons or property that result from these activities."
 

 Id.
 

 § 99E-24(a) (2017). The same is true for "[a]ny person who observes hazardous recreational activities[.]"
 

 Id.
 

 *612
 
 Second, the Hazardous Recreational Activities Act limits liability for governmental entities and employees:
 

 No governmental entity or public employee who has complied with G.S. 99E-23 shall be liable to any person who voluntarily participates in hazardous recreation activities for any damage or injury to property or persons that arises out of a person's participation in the activity and that takes place in an area designated for the activity.
 

 Id.
 

 § 99E-25(b) (2017). In turn, N.C. Gen. Stat. § 99E-23 simply requires governmental operators of skateboard parks to require the use of helmets, elbow pads, and kneepads while skateboarding at a skateboard park.
 

 Id.
 

 § 99E-23 (2017).
 

 The protections against liability afforded governmental entities under these statutes are, however, not unlimited. First, Section 99E-25 itself provides two exceptions to its limitation on liability:
 

 (1) The failure of the governmental entity or public employee to guard against or warn of a dangerous condition of which a participant does not have and cannot reasonably be expected to have had notice.
 

 (2) An act of gross negligence by the governmental entity or public employee that is the proximate cause of the injury.
 

 Id.
 

 § 99E-25(c)(1)-(2).
 

 Second, these statutes, by their plain language, only apply to persons engaging in "hazardous recreational activities," which is narrowly defined as only including "[s]kateboarding, inline skating, or freestyle bicycling."
 

 Id.
 

 § 99E-22(2) (2017). Further, "inherent risk" is defined as: "Those dangers or conditions that are characteristic of, intrinsic to, or an integral part of skateboarding, inline skating, and freestyle bicycling."
 

 Id.
 

 § 99E-22(3).
 

 When construing these statutory provisions together, it is evident the Hazardous Recreational Activities Act is not intended to give a governmental actor blanket immunity from every negligence or premise-liability claim arising in a skateboard park. Rather, it operates to limit liability of governmental entities for the
 
 increased
 
 risk of injuries caused by skateboarding, inline skating, and freestyle bicycling that is inherent in those activities. This distinction is important because immunity serves as more than an affirmative defense because it "not
 
 *613
 
 only prevents courts from entering judgments against our state government, but also protects the government from being haled into court in the first instance."
 
 Ballard v. Shelley
 
 , --- N.C. App. ----, ----,
 
 811 S.E.2d 603
 
 , 605 (2018) (citation omitted). Here, N.C. Gen. Stat. § 99E-21
 
 et seq.
 
 does not bar all
 
 *892
 
 claims by an injured person covered under the Act but rather limits those claims and provides for additional defenses. Indeed, we find this distinction further supported by the statutes themselves. Chapter 99E is entitled "Special Liability Provisions," and each article addresses standards of liability for different types of potentially hazardous activities. The Hazardous Recreational Activities Act itself differentiates its provisions from immunity: "Nothing in this section shall be deemed to be a waiver of sovereign immunity under any circumstances." N.C. Gen. Stat. § 99E-25(d). Governmental or sovereign immunity is thus an additional defense that may apply to a particular claim, including a claim falling under Section 99E-21
 
 et seq
 
 .
 
 [6]
 

 In this case, on the face of the Complaint, the 18-month-old Plaintiff was not engaged in a "hazardous recreational activity," as narrowly defined by the statute, but rather was simply playing with his brother within the Skate Park when he contacted the hot metal on the ramp. Indeed, it is not apparent, and certainly not on the face of this Complaint, that severe burns caused by scorching hot metal is an inherent risk of skateboarding or other hazardous recreational activity, such that the minor Plaintiff assumed the risk of such injuries under N.C. Gen. Stat. § 99E-24.
 

 Moreover, even assuming the minor Plaintiff's conduct falls within the ambit of the Hazardous Recreational Activities Act and the limitation of liability under N.C. Gen. Stat. § 99E-25(b), Plaintiffs, in their Complaint, expressly alleged the Town engaged in acts falling under the two statutory exceptions in Section 99E-25(c). First, the Complaint alleges the Town failed to guard against or warn of a dangerous condition of which Plaintiffs and Hess had no notice and could not reasonably be expected to have had notice. Specifically, the Complaint alleges the Town failed to inspect the ramps, take precautions against the ramps becoming dangerously hot, or warn of the potential danger of the hot metal ramps. The Complaint further specifically alleges Plaintiffs and Hess had no notice of the dangerous condition and could not reasonably be expected to have had notice of the burning hot metal. Additionally,
 
 *614
 
 the Complaint also alleges the Town engaged in gross negligence by willfully and wantonly choosing not to inspect the ramps, despite knowing the ramps were constructed of metal and left in an unshaded area of the park. Consequently, the Complaint alleges claims not barred by Section 99E-25(b). As such, to the extent the trial court dismissed the Complaint against the Town on the basis of the Hazardous Recreational Activities Act on the face of the Complaint, this was error and we reverse the trial court on this ground.
 

 II. The Town's Actual or Constructive Knowledge of a Dangerous Condition
 

 Plaintiffs also argue the trial court erred in dismissing their negligence claims against the Town. The Town contends the trial court correctly dismissed Plaintiffs' claims, arguing the allegations in the Complaint fail to allege the Town breached any duty owed to the Plaintiffs. Specifically, the Town asserts it had no duty to Plaintiffs to warn or take steps to prevent the burn injuries to the minor Plaintiff because there is no allegation the Town knew or should have known of the dangerous condition.
 
 See generally
 

 Steele v. City of Durham
 
 ,
 
 245 N.C. App. 318
 
 , 325,
 
 782 S.E.2d 331
 
 , 336 (2016).
 

 However, the Complaint alleges that the Town and ARC contracted for the design, manufacture, and sale of the "heat-attractive" ramps with both Defendants knowing the planned location of the skate park "and its lack of natural shade, and direct natural sunlight." Further, the Complaint alleges the Defendants "knew or should have known that the heat-attractive ramps placed in a location with full, direct sunlight in a hot climate present a risk of potential burn injuries to skin that touches the ramps" and "chose to recommend, install and approve for public use ramps with heat-attractive surfaces in a location with full, direct sunlight in a hot climate[.]" In their claim directed against the Town, Plaintiffs
 
 *893
 
 again expressly alleged the Town "knew, or by a reasonable inspection should have discovered, the hazardous, dangerous, and unsafe condition with the hot skateboarding ramps at the Skate Park[.]" Thus, the Complaint clearly alleges the Town knew or should reasonably have known of the alleged dangerous condition.
 

 Nevertheless, the Town maintains it had no duty to warn of the alleged dangerous condition because it constituted a known and obvious danger of which Hess or the Suarez children had equal or superior knowledge to the Town.
 
 See generally
 

 Waddell v. Metropolitan Sewerage Dist. of Buncombe Cnty.
 
 ,
 
 207 N.C. App. 129
 
 , 134,
 
 699 S.E.2d 469
 
 , 472 (2010) ;
 
 Lorinovich v. K Mart Corp.
 
 ,
 
 134 N.C. App. 158
 
 , 162,
 
 516 S.E.2d 643
 
 , 646 (1999) ;
 

 *615
 

 Farrelly v. Hamilton Square
 
 ,
 
 119 N.C. App. 541
 
 , 546,
 
 459 S.E.2d 23
 
 , 27 (1995). However, the Complaint quite plainly and repeatedly alleges Plaintiffs and Hess did not have notice of the condition and, moreover, could not reasonably be expected to have had notice. The Complaint alleges the Town failed to warn of the "hidden perils and unsafe condition of hot skateboarding ramps," that Plaintiffs and Hess had no notice of the dangerous condition and could not reasonably have been expected to discover the condition, and that, indeed, Hess had no opportunity to inspect the ramp prior to the 18-month-old Plaintiff contacting the searing hot metal.
 

 Even accepting the premise implicit in the Town's argument-that it is known and obvious metal becomes hot in the North Carolina summer sun-it does not necessarily follow that the hot metal ramp in this case constituted an open and obvious dangerous condition. At this preliminary stage of the litigation, a number of variables remain, including,
 
 inter alia
 
 , the actual appearance of the ramps (
 
 i.e.
 
 , is it apparent they are, in fact, metal) and the layout of the park itself (
 
 i.e.
 
 , would the condition be hidden from someone entering the park). Further discovery and litigation may ultimately lead to the conclusion that the hot metal ramp constituted an open and obvious condition; however, at this stage of the litigation, the allegations of the Complaint do not establish the hot metal ramp to be an open and obvious condition. As such, we reverse the trial court's Order dismissing Plaintiffs' negligence claims under Rule 12(b)(6).
 

 III. Gross Negligence
 

 In addition to the arguments raised by Plaintiffs, the Town further contends Plaintiffs failed to allege the Town acted with conscious or reckless disregard for the rights and safety of others to support a gross-negligence claim. "Gross negligence has been defined as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.' "
 
 Toomer v. Garrett
 
 ,
 
 155 N.C. App. 462
 
 , 482,
 
 574 S.E.2d 76
 
 , 92 (2002) (quoting
 
 Bullins v. Schmidt
 
 ,
 
 322 N.C. 580
 
 , 583,
 
 369 S.E.2d 601
 
 , 603 (1988) ). "Aside from allegations of wanton conduct, a claim for gross negligence requires that plaintiff plead facts on each of the elements of negligence, including duty, causation, proximate cause, and damages."
 
 Id
 
 . (citation omitted).
 

 In this case, we have already determined Plaintiffs adequately stated negligence claims against the Town. Moreover, Plaintiffs' Complaint alleges that notwithstanding the Town's knowledge and decision to use heat-attractive ramps and place them in an unshaded, direct sun-lit area, the Town failed to inspect and maintain the Skate Park, warn of the danger of the hot metal ramps, or take steps to prevent the ramps from
 
 *616
 
 overheating. The Complaint further expressly alleges that in so failing, the Town acted "wantonly, recklessly and with conscious and intentional disregard for the rights and safety of others[.]"
 

 Therefore, we conclude Plaintiffs' Complaint adequately states a claim for gross negligence to survive the Town's Motion to Dismiss under Rule 12(b)(6). Thus, at this stage of the litigation, the Town is not entitled to dismissal of Plaintiffs' gross-negligence claims.
 

 Conclusion
 

 Accordingly, for the foregoing reasons, we reverse the trial court's Order dismissing Plaintiffs' claims against the Town.
 

 REVERSED.
 

 Judges STROUD and YOUNG concur.
 

 [1]
 

 Defendant American Ramp Company (ARC) and Third-Party Defendant Alaina Hess (Hess) are not parties to the instant appeal.
 

 [2]
 

 We accept the factual allegations of the Complaint as true for the sole purpose of reviewing the Order dismissing Plaintiff's claims against the Town on the face of the Complaint. As such, this opinion should not be construed as judicially establishing any fact at issue in this case.
 

 [3]
 

 It is unclear why the trial court's Order does not contain a Rule 54(b) certification, except to say the Record before us does not reflect Plaintiffs requested one.
 

 [4]
 

 This raises a tangled issue that we need not address here. It remains somewhat of an open question in North Carolina as to under which section of Rule 12 sovereign immunity falls.
 
 See
 

 Lake v. State Health Plan for Teachers & State Emps.
 
 ,
 
 234 N.C. App. 368
 
 , 370-71 n.3,
 
 760 S.E.2d 268
 
 , 271 n.3 (2014) (citations omitted). See
 
 Can Am S., LLC v. State of N.C.
 
 ,
 
 234 N.C. App. 119
 
 , 122,
 
 759 S.E.2d 304
 
 , 307 (2014), for a discussion of why this matters under North Carolina appellate practice for purposes of appealability.
 

 [5]
 

 Article 3 to Chapter 99E of our General Statutes was enacted in 2003 in legislation titled:
 
 An Act to Establish the Duties of Operators of Skateboard Parks, to Establish the Duties of Persons Who Engage in Certain Hazardous Recreational Activities, and to Limit the Liability of Governmental Entities for Damage or Injuries that Arise Out of a Person's Participation in Certain Hazardous Recreational Activities and that Occur in an Area Designated for Certain Hazardous Recreational Activities
 
 . 2003 N.C. Sess. Law 334 (N.C. 2003).
 

 [6]
 

 Indeed, in the trial court below, the Town tabled its arguments regarding governmental or sovereign immunity for potential later proceedings. We, obviously, express no opinion on the merits or applicability of such immunity defenses to this case.