IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-250

Filed 6 February 2024

Pitt County, No. 22 CVS 395

DORIS GRIFFIN LAND and ELLIOTT LAND, Plaintiffs,

v.

KORI B. WHITLEY, M.D., PHYSICIANS EAST, P.A. d/b/a GREENVILLE OB/GYN, PITT COUNTY MEMORIAL HOSPITAL, INC. d/b/a VIDANT MEDICAL CENTER, and PITT COUNTY MEMORIAL HOSPITAL, INC. d/b/a VIDANT SURGICENTER, Defendants.

Appeal by Defendants from an order entered 27 October 2022 by Judge William R. Pittman in Pitt County Superior Court. Heard in the Court of Appeals 17 October 2023.

*Miller Law Group, PLLC, by Bruce W. Berger and MaryAnne M. Hamilton, for Plaintiffs-Appellees.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Christopher G. Smith, Hope C. Garber, and David R. Ortiz, for Defendants-Appellants.*

*Harris, Creech, Ward & Blackerby, P.A., by W. Gregory Merritt, for Pitt County Memorial Hospital, Inc., d/b/a Vidant Medical Center and Pitt County Memorial Hospital, Inc., d/b/a Vidant SurgiCenter, Defendants-Appellants.*

*Walker, Allen, Grice, Ammons, Foy, Klick & McCullough, L.L.P., by Elizabeth P. McCullough and Kelsey Heino, for Kori B. Whitley, M.D. and Physicians East, P.A., d/b/a Greenville OB/GYN, Defendants-Appellants.*

*Todd Law Offices, PLLC, by Elizabeth C. Todd and Brown, Moore & Associates, PLLC, by Matthew C. Berthold and Jennifer L. Maynard, for North Carolina Advocates for Justice, Amicus Curae.*

WOOD, Judge.

Defendants Dr. Whitley, Greenville OB/GYN, Vidant Medical Center, and Vidant SurgiCenter (collectively "Defendants") appeal from the trial court's order denying their motions to dismiss on the basis of Rules 12(b)(1), 12(b)(2), 12(b)(6) and 9(j). After careful review, we affirm the order of the trial court.

## I.  Factual and Procedural Background

The present case occurred during the beginning months of the COVID-19 pandemic and involves the statute enacted during North Carolina's state of emergency.

On 3 May 2020, the North Carolina General Assembly unanimously passed a bill entitled The Emergency or Disaster Treatment Protection Act ("The Act") providing limited immunity for health care providers during the COVID-19 pandemic. N.C. Gen. Stat. § 90-21.130 (2023). Governor Roy Cooper signed the bill into law on 4 May 2020. Retroactive to March 2020, the beginning of the pandemic, the limited immunity act protected health care providers from civil liability for claims of ordinary negligence as a result of an act or omission in the course of arranging for or providing health care services provided each of the following applied:

> (1) The health care facility, health care provider, or entity is arranging for or providing health care services during the period of the COVID-19 emergency declaration, including, but not limited to, the arrangement or provision of those services pursuant to a COVID-19 emergency rule.

(2) The arrangement or provision of health care services is impacted, directly or indirectly:

a. By a health care facility, health care provider, or entity's decisions or activities in response to or as a result of the COVID-19 pandemic; or

b. By the decisions or activities, in response to or as a result of the COVID-19 pandemic, of a health care facility or entity where a health care provider provides health care services.

(3) The health care facility, health care provider, or entity is arranging for or providing health care services in good faith.

N.C. Gen. Stat. § 90-21.133(a).  The statute specifically excluded gross negligence and willful or intentional conduct from this statutory immunity:

(b) The immunity from any civil liability provided in subsection (a) of this section shall not apply if the harm or damages were caused by an act or omission constituting gross negligence, reckless misconduct, or intentional infliction of harm by the health care facility or health care provider providing health care services; provided that the acts, omissions, or decisions resulting from a resource or staffing shortage shall not be considered to be gross negligence, reckless misconduct, or intentional infliction of harm.

N.C. Gen. Stat. § 90-21.133(b). On 15 August 2022, Governor Cooper lifted the state of emergency thereby ending the statutory limited immunity provided for health care providers by the Act.

Mrs. Land was diagnosed with a high-grade squamous intraepithelial lesion in early 2020, which was at high risk of turning into cervical cancer.  Mrs. Land's health care providers ultimately determined that a total vaginal hysterectomy ("TVH") was

- 3 -

necessary. On 29 June 2020, Defendant Dr. Whitley, assisted by resident-in-training Dr. Faiz, performed a TVH on Mrs. Land at Vidant SurgiCenter.

Dr. Whitley noted in the operative notes that due to Mrs. Land's anatomy she had difficulty during the procedure. Mrs. Land's long cervix and a uterine fibroid obscured the left cornual region of her uterus. Despite these complications, Dr. Whitley did not convert the vaginal hysterectomy to an abdominal or laparoscopic procedure, alternative surgical methods that would have allowed better visualization of Mrs. Land's uterus. Consequently, a three-inch piece of uterine tissue remained undetected in her abdominal cavity following the TVH surgery.

On 14 July 2020, Mrs. Land attended a routine post-operative visit with Dr. Whitley during which she reported experiencing abdominal pain. Dr. Whitley informed Mrs. Land that the surgery had been difficult and renewed her prescription for oxycodone for pain. Dr. Whitley noted in her medical record that Mrs. Land had no complaints other than "struggling with constipation" and described her abdomen as being soft, nontender, nondistended, with active bowel sounds. Dr. Whitley did not note in the medical records that Mrs. Land had reported abdominal pain. According to Mrs. Land, Dr. Whitley did not physically examine or touch her body during this visit.

On 25 July 2020, Mrs. Land presented with severe abdominal pain to Vidant Emergency Department in Greenville where she was diagnosed with sepsis, stage 4 kidney failure, and an abdominal infection. On 26 July 2020, Dr. McDonald

performed an initial laparoscopic exploration of her abdomen followed by emergency surgery after he detected an abscess in her pelvic cavity. Dr. McDonald converted the procedure to a laparotomy, cut open Mrs. Land's abdomen, removed the infected tissue and explored her pelvic cavity. Dr. Coiner, an OB/GYN physician, was called in to assist with the surgery. The physicians found the infected remnant uterine tissue in Mrs. Land's abdomen.

Dr. McDonald removed approximately twelve inches of Mrs. Land's bowel and left the wound open in order to drain the infection. In his post-operative diagnosis, Dr. McDonald noted Mrs. Land had "diffuse peritonitis, pelvic abscess, and an incomplete vaginal hysterectomy with uterine remnant." Mrs. Land was transferred to the intensive care unit where she experienced respiratory failure and had to be intubated on a ventilator until 28 July 2020. Mrs. Land was finally discharged from Vidant Hospital on 7 August 2020. During recovery, Mrs. Land developed pulmonary emboli in both of her lungs, and she was hospitalized again because of complications from the infected uterine remnant. From 31 August 2020 to 16 November 2020, Mrs. Land followed up with Dr. McDonald for treatment of her abdominal wound. On 18 November 2020, Mrs. Land returned to work. According to Mrs. Land, she remains unable to lift anything or to engage in physical activity and has memory loss and mood disturbances requiring psychiatric care.

On 16 February 2022, Plaintiffs, Mrs. Land and her husband, filed a complaint against Defendants Dr. Whitley, Greenville OB/GYN, Vidant Medical Center, and

Vidant SurgiCenter alleging claims arising from the hysterectomy performed by Dr. Whitley and Dr. Faiz and her related follow-up care.

In their complaint, Mr. and Mrs. Land alleged negligence and gross negligence against Dr. Whitley and against all other Defendants under the doctrine of *respondeat superior* and sought damages resulting from the medical malpractice causes of actions. Plaintiffs allege Dr. Whitley violated the duty of care she owed to Mrs. Land by:

> [1.] Failing to safely and fully perform a complete vaginal hysterectomy on June 29, 2020;
>
> [2.] Failing to convert the TVH procedure to an open hysterectomy when she encountered difficulty during the TVH;
>
> [3.] Failing to request the assistance of a second surgeon to assist her when the vaginal hysterectomy proved more difficult than expected;
>
> [4.] Failing to see all of the [uterine tissue] material she should have seen and removed during the TVH;
>
> [5.] Failing to remove all pieces of [her]uterus during the TVH and leaving a portion of [her] uterus in her pelvic cavity that, predictably, became dangerously infected and almost killed her;
>
> [6.] Failing to properly evaluate and examine [Mrs. Land] at the two-week postoperative visit to identify the festering infection caused by the infected retained remnant of uterus; and
>
> [7.] Other negligence as may be determined through discovery and trial in this matter.

On 2 May 2022, Dr. Whitley and Physicians East filed a motion to dismiss and

an answer. On 9 May 2022, Vidant Medical Center and Vidant SurgiCenter filed a motion to dismiss and an answer. Plaintiffs filed a memorandum in opposition to the motions to dismiss on 19 October 2022.

On 24 and 25 October 2022, Defendants amended their motions to dismiss on the following grounds: (1) they are immune from suit under the Act, requiring dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim for relief under Rule 12(b)(6); and (2) the complaint was noncompliant with Rule 9(j) on its face. Defendants attached several affidavits to the amended motions to dismiss, including Dr. Whitley's, regarding COVID-19 procedures at the relevant facilities. On 24 October 2022, Defendants submitted a joint memorandum accompanied by exhibits such as case law, legislative documents, press releases, and media publications about the law at issue and about the impact of COVID-19 in support of their motion.

On 26 October 2022, the trial court heard arguments on Defendants' motions to dismiss. On 27 October 2022, the trial court filed an order denying Defendants' motions. The trial court's order states the trial court carefully reviewed the entire record, the written and oral arguments of counsel, and the proffered and other relevant authority in the light most favorable to Mr. and Mrs. Land, "giving [them] every inference, which could be drawn from the allegations and resolving all doubts in favor of the Plaintiffs." Defendants filed a notice of appeal on 28 November 2022.

## II. Appellate Jurisdiction

On 26 May 2023, Plaintiffs filed a motion to dismiss Defendants' appeal on the grounds that the appeal is interlocutory and does not implicate a substantial right.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.,* 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, an interlocutory appeal "may be taken from [a] judicial order or determination of a judge of a superior or district court, . . . that affects a substantial right claimed in any action or proceeding[.]" N.C. Gen. Stat. § 1-277(a). "A substantial right is one affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a person is entitled to have preserved and protected by law: a material right." *Bowling v. Margaret R. Pardee Mem'l Hosp.*, 179 N.C. App. 815, 818, 635 S.E.2d 624, 627 (2006) (citation and internal quotation marks omitted), *disc. review denied*, 361 N.C. 425, 648 S.E.2d 206 (2007).

"As a general rule, claims of immunity affect a substantial right, and therefore merit immediate appeal." *Stahl v. Bowden*, 274 N.C. App. 26, 28, 850 S.E.2d 588, 590 (2020) (citation omitted). Nonetheless, a party claiming the protection of statutory immunity must satisfy "all of the requirements" of the statute granting the claimed immunity in order to establish a substantial right entitling him to an immediate appeal. *Wallace v. Jarvis*, 119 N.C. App. 582, 585, 459 S.E.2d 44, 46 (1995). "[O]ur Courts generally recognize immunity as a defense that can be raised under Rules

12(b)(1), 12(b)(2), or 12(b)(6)." *Suarez v. Am. Ramp Co. (ARC),* 266 N.C. App. 604, 610, 831 S.E.2d 885, 890 (2019) (citation omitted). However, generally, the denial of a defendant's motion to dismiss under Rule 12(b)(1) is not immediately appealable. *Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 28, 732 S.E.2d 614, 616 (2012) (citation omitted). Therefore, we decline to review "the trial court's order denying [D]efendant[s'] motion to dismiss pursuant to Rule 12(b)(1)" because it "is not properly before this Court." *Id.* at 29, 732 S.E.2d at 616.

Defendants contend their appeal of the order denying their motion under Rule 12(b)(2), a motion to dismiss for lack of personal jurisdiction, is an " 'adverse ruling as to the jurisdiction of the court over the person or property of the defendant,' [and] is immediately appealable and properly before this Court under N.C. Gen. Stat. § 1-277(b)." Defendants further argue that "immunity by virtue of a statute . . . affects a court's jurisdiction over a party." According to Defendants, "if a party is immune from suit by statute, then Rule 12(b)(2) is a proper vehicle for dismissal." Because Defendants are entitled to immediate appeal of the denial of Defendants' Rule 12(b)(2) motion, Plaintiffs' motion to dismiss the appeal as to Rule 12(b)(2) is denied, and we consider the merits on appeal. In our discretion, we also address Defendants' arguments pertaining to their Rule 12(b)(6) and Rule 9(j) motions.

## III. Analysis

**A. Statutory Immunity and the Emergency or Disaster Treatment Protection Act.**

First, Defendants contend that the trial court erred by denying their Rule 12(b) motions to dismiss because they have immunity under the Act against Plaintiffs' claim of negligence. Defendants argue that the Act's three statutory requirements for immunity from civil liability "existed on the face of Plaintiffs' complaint and other materials properly before the trial court, so this suit was barred based on the Act's immunity." We disagree.

"The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). Generally, the parties will present personal jurisdiction issues in one of the following procedural postures: "(1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues." *Id.*

"If the defendant supplements his motion to dismiss with an affidavit or other supporting evidence, the allegations in the complaint can no longer be taken as true or controlling and plaintiff cannot rest on the allegations of the complaint." *Id.* (cleaned up). In this circumstance, in order "to determine whether there is evidence to support an exercise of personal jurisdiction, the court then considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit

and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)." *Id.* at 693-94, 611 S.E.2d at 182-83. In other words, where "unverified allegations in the complaint meet plaintiff's initial burden of proving the existence of jurisdiction and defendants do not contradict plaintiff's allegations, such allegations are accepted as true and deemed controlling." *Data Gen. Corp. v. Cnty. of Durham,* 143 N.C. App. 97, 101, 545 S.E.2d 243, 246-47 (2001) (cleaned up). Thus, in deciding a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), courts may consider affidavits and other evidence. *Lippard v. Diamond Hill Baptist Church,* 261 N.C. App. 660, 661, 821 S.E.2d 246, 248 (2018).

When this Court reviews a decision regarding personal jurisdiction, it considers only "whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999). Although the trial court did not make findings in ruling on a Rule 12(b)(2) motion, under Rule 52(a)(2) of the North Carolina Rules of Civil Procedure, the trial court is not required to make specific findings of fact unless requested by a party. *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E.2d 521, 524 (1981). "Where no findings are made, proper findings are presumed, and our role on appeal is to review the record for competent evidence to support these presumed findings." *Bruggeman v. Meditrust Acquisition Co.,* 138 N.C. App. 612, 615, 532 S.E.2d 215, 217-18 (2000).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted where: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Silver v. Halifax Cty. Bd. of Comm'rs*, 371 N.C. 855, 861, 821 S.E.2d 755, 759 (2018) (citation omitted). The standard of review on appeal from a trial court's order dismissing a complaint pursuant to Rule 12(b)(6) is *de novo*. *McGuire v. Riedle*, 190 N.C. App. 785, 786, 661 S.E.2d 754, 756 (2008).

The Act serves to provide health care providers immunity from any civil liability for any harm or damages resulting from care provided during the COVID-19 pandemic. The Act's stated purpose is

> to promote the public health, safety, and welfare of all citizens by broadly protecting the health care facilities and health care providers in this State from liability that may result from treatment of individuals during the COVID-19 public health emergency under conditions resulting from circumstances associated with the COVID-19 public health emergency. A public health emergency that occurs on a statewide basis requires an enormous response from State, federal, and local governments working in concert with private and public health care providers in the community. The rendering of treatment to patients during such a public health emergency is a matter of vital State concern affecting the public health, safety, and welfare of all citizens.

N.C. Gen. Stat. § 90-21.131. This purpose is carried out by providing limited statutory immunity for those health care providers who meet the three requirements.

For those seeking to use the affirmative defense of the immunity, (1) the health care provider must be "arranging for or providing" health care during the COVID-19 emergency; (2) the care provided must be affected, directly or indirectly, by the COVID-19 pandemic; and (3) the defendant must act in good faith. N.C. Gen. Stat. § 90-21.133(a).

The protections against civil liability afforded the health care providers who qualify for the immunity under these statutes are, however, not unlimited. N.C. Gen. Stat. § 90-21.133(b) provides exceptions to its limitation on liability:

> (b) The immunity from any civil liability provided in subsection (a) of this section shall not apply if the harm or damages were caused by an act or omission constituting gross negligence, reckless misconduct, or intentional infliction of harm by the health care facility or health care provider providing health care services; provided that the acts, omissions, or decisions resulting from a resource or staffing shortage shall not be considered to be gross negligence, reckless misconduct, or intentional infliction of harm.

N.C. Gen. Stat. § 90-21.133(b). Where statutory language is clear and unambiguous, our Courts do not "engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." *Edwards v. Morrow*, 219 N.C. App. 452, 455, 725 S.E.2d 366, 369 (2012).

When construing these statutory provisions together, it is evident that the Act is not intended to give a health care provider blanket immunity from every claim of civil liability arising during the COVID-19 pandemic. The statutes reflect that the

- 13 -

health care provider must show that he or she meets the statutory requirements and has not engaged in actions constituting gross negligence, reckless misconduct, or intentional infliction of harm in order to receive the immunity from any civil liability. This plain reading of the statute is consistent with the general principle of statutory immunity, which as an affirmative defense, is available to a defendant only if he satisfies all of the requirements or elements defined in the relevant statutes. *Stahl*, 274 N.C. App. at 28, 850 S.E.2d at 590.

In reviewing Plaintiffs' complaint on its face and the record evidence before us, we note Plaintiffs concedes Defendants have satisfied the first element of the statutory immunity, "as Defendants were providing health care services during the time of the COVID-19 emergency declaration."

The second element of the statute requires Defendants to show Mrs. Land's care was affected, directly or indirectly, by the COVID-19 pandemic. In their affidavits, Dr. Whitley, Dr. Lindbeck, and both the Medical Director and Chief of Staff at ECU Health SurgiCenter, provide detailed information regarding how the pandemic affected health care facilities and patient care in general. However, Defendants' affidavits fail to establish a causal link between the impact of COVID-19 and Mrs. Land's care or treatment. On its face, Plaintiffs' complaint alleges Dr. Whitley failed to fully perform a complete vaginal hysterectomy on 29 June 2020, failed to convert the TVH procedure to an open hysterectomy when she encountered difficulty during the TVH, failed to request the assistance of a second surgeon  when

- 14 -

the vaginal hysterectomy proved more difficult than expected, failed to see all of the material she should have seen and removed during the TVH, and failed to remove all pieces of the uterus during the TVH leaving a portion of Mrs. Land's uterus in her pelvic cavity.

Dr. Whitley's affidavit does not directly controvert these allegations. Instead, Dr. Whitley's affidavit states that during the pandemic, physicians were concerned that "operative procedures requiring gas insufflation of the abdomen ('laparoscopy') might lead to increase risk of transmission of the virus upon exsufflation and expiration of the gas from the abdomen" which resulted in the reduction of those procedures so that laparoscopy was not viewed as a readily available option should a complication or suspected complication occur. While Dr. Whitley's sworn affidavit provides reasoning for why the TVH procedure was the first option for the hysterectomy procedure, it is devoid of any COVID-19 related explanation of why the TVH procedure was not properly completed, why another surgeon was not consulted after complications arose, why another surgical procedure could not be utilized on Mrs. Land after complications in the surgery arose, and why a remnant of Mrs. Land's uterus was left in her body.

Furthermore, neither Dr. Whitley's nor Dr. Lindbeck's affidavits offered evidence as to how Mrs. Land's follow-up care was directly or indirectly impacted by the pandemic. Neither affidavit disputes Plaintiffs' contention based upon *respondeat superior* that Dr. Whitley and the other Defendants failed "to properly

evaluate and examine Mrs. Land at the two-week postoperative visit to identify the festering infection caused by the infected retained remnant of uterus." The uncontroverted allegations in Plaintiffs' complaint have not been countered by the evidence put forth by Defendants.

Additionally, the affidavits presented by Defendants do not address the last requirement of N.C. Gen. Stat. § 90-21.133(a), that the health care provider must have acted in good faith in providing health care treatment and services. N.C. Gen. Stat. § 90-21.133(a). While Defendants' affidavits discuss how the challenges of COVID-19 impacted their provision of health care to patients in general, there is no assertion Defendants provided treatment and care to Mrs. Land in good faith.

Moreover, even if we were to presume the evidence Defendants presented is sufficient to show that Defendants are entitled to limitations of civil liability based upon the statutory immunity of N.C. Gen. Stat. § 90-21.133(a), Plaintiffs expressly alleged Defendants engaged in acts falling under the statutory exceptions of N.C. Gen. Stat. § 90-21.133(b).

Defendants contend Plaintiffs' complaint contains conclusory allegations of gross negligence with no alleged factual basis. We disagree. A complaint is adequate if it provides sufficient information "to give the substantive elements of a legally recognized claim." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 205, 367 S.E.2d 609, 612 (1988). The allegations in the complaint must only be "sufficiently particular to give the court and the parties notice of the transactions,

occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C. Gen. Stat. § 1A-1, Rule 8(a)(1).

"Gross negligence has been defined as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.' " *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)). "Aside from allegations of wanton conduct, a claim for gross negligence requires that plaintiff plead facts on each of the elements of negligence, including duty, causation, proximate cause, and damages." *Id.* (citation omitted).

Plaintiffs need only provide sufficient facts to support the allegation of gross negligence. The determination of whether a given course of conduct represents gross negligence is for the jury. *Ray v. N.C. Dep't of Transp.,* 366 N.C. 1, 13, 727 S.E.2d 675, 684 (2012) (citation omitted). At the motion to dismiss stage, the court may only take account of the plaintiffs' allegations, construed liberally, and draw all reasonable inferences in plaintiffs' favor. *In re K.G.,* 260 N.C. App. 373, 376, 817 S.E.2d 790, 792 (2018).

Here, Plaintiffs' complaint adequately describes the negligent care Mrs. Land is alleged to have received and lists several ways in which that care breached Dr. Whitley's duty of care as a medical professional. Plaintiffs' complaint alleges Dr. Whitley violated the duty owed to Mrs. Land by (1) failing to safely and fully perform a TVH; (2) failing to convert the TVH procedure to an open hysterectomy when she

encountered complications during the surgery; (3) failing to request the assistance of a second surgeon to assist her when the TVH procedure proved to be difficult; (4) failing to see all of the uterine material that should have been discovered and removed during the TVH; (5) failing to remove all pieces of Mrs. Land's uterus during the TVH and leaving a portion of her uterus in her pelvic cavity, which later became infected; (6) failing to properly evaluate and examine Mrs. Land at the two-week postoperative visit to identify the infection caused by the remnant of uterus; and (7) other negligence as may be determined through discovery and trial.

The complaint further expressly alleges that in so failing to meet her duty of care, "Dr. Whitley's failures and violations of the standard of care were negligent, careless, reckless, and grossly negligent." Consequently, Plaintiffs' complaint sufficiently alleges claims not barred by N.C. Gen. Stat. § 90-21.133(a) and at this stage of the litigation, Defendants are not entitled to dismissal of Plaintiffs' claims of gross negligence. We affirm the trial court's denial of Defendants' motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6).

**B. Defendants' Motions to Dismiss under Rule 9(j).**

Next, Defendants argue the trial court erred when it denied Defendants' motions to dismiss pursuant to Rule 9(j). Defendants contend Plaintiffs' complaint is subject to the requirements of the plain language of Rule 9(j).

Rule 9(j) of the North Carolina Rules of Civil Procedure requires

Any complaint alleging medical malpractice . . . shall be

dismissed unless . . . [t]he pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care . . .

N.C. Gen. Stat. § 1A-1, Rule 9(j). The rule "serves as a gatekeeper . . . to prevent frivolous malpractice claims by requiring expert review before filing of the action." *Vaughn v. Mashburn*, 371 N.C. 428, 434, 817 S.E.2d 370, 375 (2018).

The record demonstrates Plaintiffs provided the following certification as part of their original complaint:

> Plaintiff states that at least one medical health provider who Plaintiff reasonably believes will qualify as expert witnesses under Rule 702 of the North Carolina Rules of Evidence reviewed all of the allegations of negligence related to medical care that is described in this Complaint and all the medical records pertaining to the alleged negligence that are available to Plaintiff after a reasonable inquiry. This expert is, or these experts are, willing to testify that the medical care complained of did not comply with the applicable standard of care . . . .

Defendants specifically argue Plaintiffs'

> assertion that the allegations of negligence pertaining to the medical care described in the Complaint were reviewed similarly fails to comply with the strict pleading requirements of Rule 9(j). The rule does not allow for the certifying expert to rely on a description of allegations of negligence, but requires certification that the medical care itself, and all medical records available to a plaintiff after reasonable inquiry, be reviewed.

We disagree.

The Supreme Court of North Carolina has held Rule 9(j) imposes "a distinct requirement of expert certification." *Moore v. Proper*, 366 N.C. 25, 30, 726 S.E.2d 812, 816 (2012) (citation omitted). It is that requirement and not the specific words used to make the certification that must be given "strict consideration." *Id*. While the use of statutory language may be advisable, Plaintiffs' certification conveys the same principles and language from Rule 9(j), even if the statute's language is ordered differently within the certification. Plaintiffs contend that a requirement that parties mirror exactly any specific certification language in Rule 9(j) "would be counter to the canons of statutory interpretation," and would "superimpose a provision . . . that the General Assembly did not include." We agree. Defendants' argument is without merit and is overruled.

## IV.  Conclusion

Because Plaintiffs' complaint, liberally construed, sufficiently alleges claims not barred by N.C. Gen. Stat. § 90-21.133(a), Defendants are not entitled to dismissal of Plaintiffs' gross negligence claims at this stage of litigation. Additionally, Plaintiffs' certification has met the requirements pursuant to Rule 9(j). Consequently, we affirm the trial court's order denying Defendants' motions to dismiss pursuant to Rule 12(b)(2), Rule 12(b)(6), and Rule 9(j).

AFFIRMED.

Judges ZACHARY and STADING concur.